[No. 22049-7-I. Division One. September 18, 1989.]

THE STATE OF WASHINGTON, *Respondent,* v. OLLIE WENDELL JACKMON, *Appellant.*

*Lenell Nussbaum* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Jesse Franklin* and *Cynthia Gannett, Deputies,* for respondent.

WINSOR, J.—Ollie Wendall Jackmon appeals the imposition of an exceptional sentence for his conviction for first degree attempted murder. The court sentenced Jackmon to 320 months; the standard range is 180 to 240 months. Jackmon contends: (1) that the record does not support the court's reasons for imposing the exceptional sentence; and (2) that the court's reasons do not justify a sentence outside the standard range. We reverse and remand for resentencing.

Jackmon worked as a presser at Samuel Martin, Ltd., for approximately 5 years. The work was seasonal, and Jackmon was laid off in January 1987. Later that year, the victim (one of the officers of the corporation) telephoned Jackmon to invite him back to the company to help out with some extra work. Jackmon indicated that he would return to work, but he did not. The next contact between Jackmon and the victim occurred in late July 1987. Jackmon phoned the victim to ask about his vacation pay from 1986. The victim explained that Jackmon was not entitled to any, and the conversation came to an abrupt end.

There are two entrances to the Samuel Martin, Ltd., premises. One is a very slow and rarely used elevator which opens into a small room that is closed off by a security cage with a locking gate at the north end of the building. The second is a flight of stairs that leads from an alley on the building's west side directly into the work area. On August 5, 1987, at approximately 8:30 a.m., Jackmon entered the premises via the alley staircase.

Jackmon greeted various employees, and proceeded to the victim's office. The victim's father saw Jackmon enter his son's office. The victim, who had broken his ankle in November 1986 and who still required crutches and a removable soft cast, was sitting, typing invoices, when Jackmon entered the office. A few seconds later two shots

were heard. There was no evidence of any discussion or struggle between Jackmon and the victim.

The victim was found lying on the floor, and was taken to the hospital where he was treated for a gunshot wound to the back of his neck which injured his cervical spine. He is permanently paralyzed.

Jackmon was charged with attempted murder in the first degree, RCW 9A.28.020 and RCW 9A.32.030(1)(a). He waived a jury, and the case was tried to the court. He was found guilty as charged.

At sentencing, the court determined that Jackmon's offender score was 0, resulting in a standard range of 180 to 240 months. *See* RCW 9.94A.310. The court imposed an exceptional sentence of 320 months, giving two reasons in support of the exceptional sentence:

1. The victim was particularly vulnerable due to a preexisting injury to his leg; and

2. The defendant used his position as a former employee to gain free access to the business where the crime was committed.

Jackmon contends that reason 1 is not supported by the record because there is no evidence that the victim's disability rendered him "significantly more vulnerable than other victims of the same crime". D. Boerner, *Sentencing in Washington* § 9.13(b), at 9–38 (1985). Jackmon contends that reason 2 is not supported by the record because there is no evidence that he occupied a position of trust with the victim, or that he enjoyed greater than usual access to Samuel Martin's premises because of his prior employment as a presser.

When reviewing an exceptional sentence, this court must first determine whether the trial court's reasons are supported by the record. RCW 9.94A.210(4)(a); *State v. McAlpin,* 108 Wn.2d 458, 462, 740 P.2d 824 (1987); *State v. Nordby,* 106 Wn.2d 514, 517, 723 P.2d 1117 (1986). Because this is a factual question, the sentencing judge's reasons will be upheld if they are not "clearly erroneous." *McAlpin,* 108 Wn.2d at 462; *Nordby,* 106 Wn.2d at 517–18. Second, the

reviewing court must independently determine whether, as a matter of law, the trial court's reasons are substantial and compelling, and whether they are factors necessarily considered in computing the standard range. RCW 9.94A-.210(4)(a); RCW 9.94A.120(2); *McAlpin,* 108 Wn.2d at 463; *Nordby,* 106 Wn.2d at 518.

REASON ONE: VICTIM VULNERABILITY

The Sentencing Reform Act of 1981 (SRA) explicitly provides that the trial court may consider that "[t]he defendant knew or should have known that the victim of the current offense was particularly vulnerable or incapable of resistance due to extreme youth, advanced age, *disability,* or ill health", in the exercise of its discretion to impose an exceptional sentence. (Italics ours.) RCW 9.94A-.390(2)(b). There are no Washington decisions regarding disabled victims.

Minnesota Guidelines contain a provision similar to RCW 9.94A.390(2)(b). Its courts are authorized to depart from the standard range when "[t]he victim was particularly vulnerable due to age, infirmity, or reduced physical or mental capacity, which was known or should have been known to the offender." Minn. Stat. Ann. § 244 (West Supp. 1989); Minnesota Sentencing Guidelines and Commentary II(D)(2)(b)(1) (West 1989). Minnesota interprets the statute as requiring that the victim's disability or handicap not only be known to the perpetrator, but that it also be a substantial factor in the accomplishment of the crime. *Compare State v. Graham,* 410 N.W.2d 395 (Minn. Ct. App. 1987) (exceptional sentence affirmed where the assault victim, who suffered from muscular dystrophy and had a pacemaker, told the assailants of his impairments when he pleaded for mercy), *review denied* (Sept. 30, 1987) *with State v. Hanson,* 405 N.W.2d 467 (Minn. Ct. App. 1987) (exceptional sentence reversed because there was no evidence that the defendant knew his victim had an injured

leg, nor was there any evidence that the victim would have escaped had his leg not been injured).

■ We agree with Minnesota's analysis. We therefore limit the application of this aggravating factor to cases where the defendant not only knew or should have known of the victim's disability at the time of the offense, but also the victim's disability must have rendered the victim more vulnerable to the particular offense than a nondisabled victim would have been.

The record here fails on both counts. There is no evidence that Jackmon knew at the time of the shooting that the victim was disabled. The victim broke his ankle in November 1986 while Jackmon was employed at Samuel Martin, Ltd. The offense, however, occurred 7 months after Jackmon's employment ended. In that time, the victim spoke with Jackmon on the phone about returning to work and vacation pay, but there is no evidence that the victim told Jackmon his ankle had not healed, or that Jackmon had recently seen the victim. The victim was shot in the back of the neck while sitting at a typing table. There is no evidence whether the victim's cast would have been visible in this position to someone standing behind him.

Moreover, there is no indication that the victim's disability rendered him more vulnerable to Jackmon's assault than an able-bodied person would have been. The victim was shot from behind, apparently without warning, while sitting down. It is highly unlikely that an able-bodied person would have been able to escape Jackmon's attack. Therefore, the victim's disability may not be used to justify an exceptional sentence. *State v. Hanson, supra; see also State v. Crutchfield,* 53 Wn. App. 916, 923–24, 771 P.2d 746 (1989) (finding that victim, who had ingested cocaine shortly before she was strangled, was particularly vulnerable was not supported where the record did not contain enough evidence from which to determine whether her cocaine use was a substantial factor in the homicide).

### REASON TWO: ABUSE OF TRUST

The SRA recognizes that where the crime is a major economic offense the court may impose an exceptional sentence where "[t]he defendant used his or her position of trust, confidence, or fiduciary responsibility to facilitate the commission of the current offense." RCW 9.94A.390-(2)(c)(iv). This factor has also been approved in noneconomic offenses. *E.g., State v. Davis,* 47 Wn. App. 91, 95, 97–98, 734 P.2d 500, *review denied,* 108 Wn.2d 1029 (1987); *State v. Harp,* 43 Wn. App. 340, 342–43, 717 P.2d 282 (1986).

The record here establishes that Jackmon worked at Samuel Martin, Ltd., for approximately 5 years. On the day of the offense Jackmon entered Samuel Martin, Ltd., via the alley staircase. Jackmon passed three or four employees on his way to the victim's office. No one challenged his presence. The trial court relied on these facts to support the imposition of an exceptional sentence.

▮ Jackmon contends, however, that the Legislature intended a degree of trust significantly greater than that involved in the usual social or business relationship. He cites no authority in support of this proposition. A similar argument was rejected, though on facts showing considerably greater trust, in *State v. Bissell,* 53 Wn. App. 499, 501, 767 P.2d 1388 (1989) ("if a large number of former employees will be caught in the net of this aggravating circumstance, so be it"). *See also State v. Davis, supra* (exceptional sentence affirmed where the defendant, who had been painting the victim's house a short time before the assault, used his position of trust to get the victim to open her front door to allow him entry immediately before the assault); *State v. Gonzales,* 46 Wn. App. 388, 406, 731 P.2d 1101 (1986) (stating that while the defendant, who had been in the victim's house on a prior occasion, did not occupy a position of trust, other members of the defendant's family who had worked for the victim in the past "may have occupied such a position of trust"). Thus, the trial court's finding that Jackmon occupied a position of trust was not clearly erroneous.

Jackmon contends, however, that even if he did occupy a position of trust, there is no evidence that he abused this trust "to facilitate the commission of the current offense." RCW 9.94A.390(2)(c)(iv). We agree. There was no evidence that Jackmon was permitted an unusual degree of access to the company because he was a former employee; the record does not contain any evidence regarding whether nonemployees ever enter Samuel Martin's premises via the alley staircase, or whether the security gate between the elevator and the offices is kept locked. Thus, the trial court's finding that Jackmon abused a position of trust to commit the instant offense is not supported by the record. *See Gonzales,* 46 Wn. App. at 406 (reversal of exceptional sentence because there was no evidence that the defendant's family members, who may have occupied a position of trust, gave the defendant "inside information" regarding the victim's home).

We reverse the exceptional sentence and remand for resentencing.

COLEMAN, C.J., and GROSSE, J., concur.