[No. 44369-1-I.   Division One.   February 28, 2000.]

THE STATE OF WASHINGTON, *Respondent*, v. CLAYTON JAMES HOOPER, *Appellant*.

*Christopher Gibson* of *Nielsen, Broman & Associates, P.L.L.C.*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Scott A. Marlow, Deputy*, for respondent.

PER CURIAM — Assaulting witnesses because they call 911 to report a crime is a valid aggravating factor in support of an exceptional sentence. So is assaulting a disabled individual by punching him in the face, taking his cane, and knocking him onto his car. Because the court here placed more weight on these factors than on the invalid particular vulnerability finding, we affirm Clayton Hooper's exceptional sentence.

## FACTS

Stacey McEwan testified she arrived at a restaurant and was getting out of the car when a young girl ran up and screamed for help, saying a group was assaulting her friends. William McEwan, Stacey's father, had already ar-

rived and was parked in a disabled person stall. William testified he walked with a cane because of a bad back and arthritis.

Stacey called 911. After a few minutes and while still on the phone, Stacey noticed the alleged assault had ended. A car approached, passed her, stopped, and backed up. Hooper jumped out and renewed his earlier scuffle, then turned his attention to the McEwans. He demanded to know whether they were calling police, then said, "Call the . . . cops."

William testified he tried to stand in front of Stacey to protect her but Hooper took his cane and punched him in the face. Hooper then hit Stacey across the face with the cane and broke her nose.

The State charged Hooper with second degree assault of Stacey and third degree assault of William. The jury found him guilty of both charges.[1]

The prosecutor recommended standard range sentences of 22 to 29 months and 12 to 16 months respectively. Nevertheless, the trial court imposed exceptional concurrent terms of 60 months for each count. The court found Hooper knew William was obviously disabled because he used a cane, which Hooper used as a weapon to assault Stacey. And it found Hooper's attention was drawn to the McEwans after learning Stacey was calling the police.

Although it acknowledged Hooper's offenses did not involve domestic violence, the court noted the Legislature's purposes for criminalizing similar conduct when it created the offense of interfering with a domestic violence report. The court found Hooper's crimes distinguishable from other second and third degree assaults because he assaulted Stacey as she tried to obtain police assistance. It found that public policy warranted heightened protection to an individual calling 911 for assistance. Finally, the court found Stacey was particularly vulnerable to assault by being on the phone, which Hooper observed and took advantage of.

---

[1]The jury acquitted Hooper of one count and could not agree on a verdict in another, both of which related to the earlier incident for which Stacey had called police.

Hooper appeals the exceptional sentences.

## DECISION

■ ■ There are three potential issues in reviewing an exceptional sentence. First, the defendant may challenge the factual basis of the court's reasons for imposing the sentence, under the "clearly erroneous" standard of review; second, he may attack the legal justification of the reasons, which are reviewed as a matter of law; and third, the defendant may assert the sentence is excessive, which is reviewed for an abuse of discretion.[2] Only the first two issues apply here.

Disability

Hooper claims William's disability may not be used to enhance his punishment because the court did not find the condition rendered him particularly vulnerable to the crime.

■ An exceptional sentence may be based on a finding the offender "knew or should have known that the victim . . . was particularly vulnerable or incapable of resistance due to . . . disability . . . ."[3] The particular vulnerability must be a substantial factor in committing the crime.[4] In analyzing this factor, we focus on the victim and ask whether he was more vulnerable to the offense than other victims and whether the accused knew of that vulnerability.[5]

Here Hooper obviously saw that William used a walking cane.[6] Although the trial court did not expressly find William's disability made him particularly vulnerable to the assault, the court's focus on the cane implies this finding.

---

[2]RCW 9.94A.210(4); *State v. Serrano*, 95 Wn. App. 700, 711, 977 P.2d 47 (1999).

[3]RCW 9.94A.390(2)(b).

[4]*State v. Jackmon*, 55 Wn. App. 562, 566-67, 778 P.2d 1079 (1989).

[5]*State v. Garibay*, 67 Wn. App. 773, 778, 841 P.2d 49 (1992), *abrogated on other grounds in State v. Moen*, 129 Wn.2d 535, 919 P.2d 69 (1996).

[6]*Cf. Jackmon*, 55 Wn. App. at 567 (no evidence defendant knew at time of shooting that victim was disabled).

A person using a cane is plainly more vulnerable to a physical attack than someone who can walk without assistance and with both hands free. It is equally obvious that the person becomes even more vulnerable when the assailant takes the cane.[7]

The facts here bear this out. William acknowledged his effort to resist by protecting his daughter failed. He also testified the assault aggravated his back pain and caused muscle spasms. Finally, he said he was knocked onto his car and felt like he was going to pass out. Because William's disability made him particularly vulnerable to the assault and because his vulnerability was implicit in the court's finding, we uphold its reliance on William's disability to justify an exceptional sentence.

Phone call

Hooper asserts the court erred by analogizing his conduct to interfering with a domestic violence report[8] because the Legislature's purpose in creating that crime was to provide additional protection only to persons reporting domestic violence.

The court acknowledged domestic violence was not at issue and that there was no similar crime applicable to the facts here. The court reasoned, however, that enhancing an assailant's sentence for targeting a victim because she calls

---

[7] *Cf. Jackmon*, 55 Wn. App. at 567 (no proof victim's injured ankle, which was in a cast, rendered him more vulnerable to being shot from behind while sitting down).

[8] RCW 9A.36.150 provides:

(1) A person commits the crime of interfering with the reporting of domestic violence if the person:
(a) Commits a crime of domestic violence, as defined in RCW 10.99.020; and
(b) Prevents or attempts to prevent the victim of or a witness to that domestic violence crime from calling a 911 emergency communication system, obtaining medical assistance, or making a report to any law enforcement official.
(2) Commission of a crime of domestic violence under subsection (1) of this section is a necessary element of the crime of interfering with the reporting of domestic violence.

the police furthers the same policy rationale, namely, to protect crime victims or witnesses to a crime who seek police intervention. The court found that by attacking the McEwans because they intervened, Hooper engaged in more egregious conduct than others convicted of second degree or third degree assault.

■■ The court's reasoning is sound. Permitting a court to deviate from the standard range under these circumstances supports the policy of encouraging witnesses to intervene when they observe violent crimes.[9] Moreover, choosing a victim because she reports a crime is not an element of either second degree or third degree assault that inheres in their standard ranges. Finally, because the statutory list of aggravating factors[10] is illustrative only, a defendant's conduct need not precisely fit within one of the factors.[11] "What is important is whether the conduct was proportionately more culpable than that inherent in the crime."[12]

Hooper argues the court did not find he assaulted Stacey in an effort to stop her from reporting other crimes, but only because she called police. This distinction is not rele-

---

[9]*See State v. Hillman,* 66 Wn. App. 770, 776, 832 P.2d 1369 ("It has long been the policy of our law to protect the 'Good Samaritan'. . . . Washington has adopted a 'Good Samaritan' statute which provides immunity against civil liability for those who render emergency care at the scene of an emergency, unless they commit gross negligence or willful or wanton misconduct." (footnote omitted)), *review denied,* 120 Wn.2d 1011 (1992); *see also State v. Hudlow,* 99 Wn.2d 1, 18, 659 P.2d 514 (1983) ("Insofar as the rape shield law bars minimally probative evidence that may distract or inflame jurors to acquit defendants on the basis of prejudice, furthers the truth-determining function of rape trials, and encourages victims to report and prosecute sex crimes, it furthers compelling state interests."; *State v. Penn,* 89 Wn.2d 63, 66-67, 568 P.2d 797 (1977) (permitting use of force where actor reasonably believes intervention necessary to protect another; stating, "We are aware this approach may cause an innocent person who is striking in self-defense, to be harmed with impunity merely because appearances were against him. However, we consider this to be a lesser evil than allowing an innocent defender who is acting under a mistake of fact to be convicted of a serious crime.").

[10]RCW 9.94A.390(2).

[11]*State v. Chadderton,* 119 Wn.2d 390, 397-98, 832 P.2d 481 (1992).

[12]*Chadderton,* 119 Wn.2d at 398.

vant because Hooper's conduct is equally culpable under either scenario.

Hooper claims that even if he assaulted Stacey to prevent her from reporting the alleged earlier crimes, the real facts doctrine precluded the court from relying on that fact to impose an exceptional sentence.

■ The "real facts" doctrine forbids a sentencing court from basing an exceptional sentence on unstipulated facts that establish the elements of a more serious or uncharged crime.[13] One purpose of this rule is to hold defendants accountable for conduct resulting in conviction, not for crimes the State chose not to prove.[14]

Hooper identifies one murder aggravating factor and two offenses that would apply here: killing the victim to conceal another crime;[15] intimidating a witness;[16] and tampering with a witness.[17]

Because he did not kill Stacey, the concealment aggravating factor could not have been alleged by the State. Nor could Hooper have been convicted of either intimidating or tampering with a witness, because both require an attempt to induce a witness to withhold relevant information. Here there was no evidence Hooper attempted to induce Stacey to withhold information. Indeed, before he assaulted both of the McEwans, he as much as dared them to call police.

---

[13]RCW 9.94A.370(2).

[14]*State v. McAlpin*, 108 Wn.2d 458, 466, 740 P.2d 824 (1987).

[15]RCW 10.95.020(9)(offender committing murder may be charged with aggravated murder if victim killed to conceal commission of crime or to protect or conceal identity of any person committing a crime).

[16]RCW 9A.72.110(1)(d) provides, "A person is guilty of intimidating a witness if [he], by use of a threat against a current or prospective witness, attempts to: . . . [i]nduce that person not to report the information relevant to a criminal investigation . . . ."

[17]"A person is guilty of tampering with a witness if he or she attempts to induce a witness or person he or she has reason to believe is about to be called as a witness in any official proceeding or a person whom he or she has reason to believe may have information relevant to a criminal investigation . . . to: . . . (c) [w]ithhold from a law enforcement agency information which he or she has relevant to a criminal investigation . . . ." RCW 9A.72.120(1).

And, as focused on by the court, Hooper's assault occurred because Stacey called police, not to persuade her to curtail her call. Therefore, the concerns underlying the "real facts" doctrine do not exist here and the court properly relied on Hooper's targeting of Stacey to enhance his sentence.

### Particular vulnerability

■ The court found Stacey was particularly vulnerable to an assault because she was on the phone. Hooper contends there was no evidence Stacey was less able to avoid the assault or was more vulnerable to the attack than a person not speaking on the phone.

We agree. Unlike her father, who apparently needed his cane for support, Stacey could have dropped the phone without further endangering herself. She was not, for example, alone in an isolated area and dependent on the phone for help. In fact, after she was assaulted, Stacey ran into the restaurant, finished her call, and gave the phone to someone else. With or without the phone, Stacey was equally vulnerable to Hooper's assault. The court thus erred by finding Stacey particularly vulnerable while she was on the phone.

### Proportionate punishment

The court concluded that an exceptional sentence would ensure that the punishment for the offense was proportionate to the seriousness of the crime and Hooper's criminal history. Hooper claims the record fails to support this conclusion because there was no extraordinarily serious harm or culpability resulting from the multiple offenses that would not be addressed by standard range terms.[18]

The court did not explain its conclusion. But by focusing on William's disability, and on Hooper's using the cane as a weapon and targeting the victims because they intervened,

---

[18]*State v. Fisher,* 108 Wn.2d 419, 427-28, 739 P.2d 683 (1987) (proper to rely on aggravating factor that standard range for multiple offenses clearly too lenient when there is some extraordinarily serious harm or culpability resulting from multiple offenses that would not otherwise be accounted for by presumptive range).

it is apparent the court found extraordinary culpability not accounted for by the presumptive ranges. This is illustrated by the court's other conclusions: that an exceptional sentence under the facts of the case promoted respect for the law by providing a just sanction; and afforded the public protection from the type of conduct displayed by Hooper.

Remedy

■ Because we find invalid the court's finding that Stacey was particularly vulnerable, we must determine whether remand for resentencing is necessary. When a court bases an exceptional sentence on an invalid factor, remand is required unless the record clearly indicates the court would have imposed the same sentence absent the factor.[19]

The trial court here found that each reason was sufficient to justify the sentence, and that if this court affirmed at least one of the factors, there would be no need for remand because the sentence would remain the same. Hooper urges us to disregard this "now familiar boilerplate language" and to remand for resentencing if we invalidate any of the court's factors.

Underlying Hooper's argument is the claim that because the prosecutor routinely includes the same language in the proposed findings and conclusions, it does not necessarily reflect the judge's actual thinking. The facts belie this claim. The judge assumed that since the prosecutor did not recommend an exceptional sentence, he would need to draft his own findings. The prosecutor offered to type the findings and the court accepted, but requested the prosecutor e-mail the proposed findings so he could make necessary modifications to conform to his ruling. This indicates the court adopted the prosecutor's "boilerplate" language after considering its applicability.

In addition, the court placed little relative weight on Stacey's vulnerability, instead dwelling principally on William's disability and Stacey's status as a witness seeking police

---

[19]*State v. Parker,* 132 Wn.2d 182, 189, 937 P.2d 575 (1997).

assistance. For these reasons, we conclude the trial court would impose the same sentence without the invalid factor. Affirmed.