[No. 61462-2-I.   Division One.   April 13, 2009.]

THE STATE OF WASHINGTON, *Respondent*, v. MARILEA R. MITCHELL, *Appellant*.

---

[14] *State v. Meridieth*, 144 Wn. App. 47, 180 P.3d 867 (2008).

[15] RAP 10.10(c).

*Sarah M. Hrobsky* (of *Washington Appellate Project*), for appellant.

*Janice E. Ellis, Prosecuting Attorney*, and *Mary K. Webber* and *Seth A. Fine, Deputies*, for respondent.

¶1 BECKER, J. — Appellant Marilea Mitchell and her boyfriend were convicted of the crime of criminal mistreatment for starving a young, undernourished boy who lived with them. The information alleged that Mitchell had "assumed the responsibility to provide to a dependent person the basic necessities of life." The statute defining the crime speaks of causing bodily harm "to a child or dependent person." Appellant contends the terms "child" and "dependent person" are distinct and mutually exclusive and that the conviction violated her due process rights because there was no evidence the boy was "a dependent person" rather than a "child." We hold the terms are not mutually exclusive and affirm the conviction.

¶2 The child in question, S.A., was born in October 2002. His biological father is Danny Abegg. According to testimony at trial, from the age of five months until the age of three, S.A. lived with Pam Taylor. S.A.'s mother, a drug addict, took him away from Taylor in October 2005. The boy's mother did not feed him, and as a result he began to hoard food. Two months later Abegg assumed custody and

began to care for S.A. Also living in the home was Abegg's girl friend, appellant Mitchell, who shared with Abegg the responsibility of looking after S.A. At that time the boy weighed 38 pounds.

¶3 A year later, Mitchell's sister saw S.A. and became concerned that the boy was too skinny. She offered Mitchell and Abegg help in getting him to a doctor. Mitchell put her off, saying that they were working on getting medical coupons. When Mitchell's sister saw S.A. three months later in March 2007, she called Child Protective Services. Police went to the apartment where the family was living on a report that there was a boy who might be starving and in need of medical attention. They found S.A. in bed, smelling of urine. He was pale, emaciated and so weak that he could not stand up on his own. He weighed less than 26 pounds. Doctors who examined S.A. concluded that he was in a severely malnourished and life-threatening condition, and that he had been suffering from malnutrition for a long time.

¶4 While in the emergency room, S.A. said that if he ate he would be punished by being required to stay in his bed or sleep in the bathtub. Later, at Children's Hospital, he was reluctant to eat in the daytime. He explained that he was not allowed to eat unless it was dark out. Hospital staff caught him hoarding food.

¶5 The State charged Mitchell and Abegg with criminal mistreatment in the first degree. A bench trial was held in December 2007. Mitchell and Abegg were tried together. There was evidence that when they caught S.A. hoarding food, they sent him to his room and locked up the food. Mitchell and Abegg argued that they did not realize how bad the situation was with the boy. They asked the court to find that their mental state was at most one of negligence, rather than recklessness. The court found Mitchell and Abegg guilty of criminal mistreatment in the first degree as charged in the information. Mitchell appeals.

¶6 The amended information alleged that Mitchell was "a person who has assumed the responsibility to provide

to a dependent person the basic necessities of life" and had caused bodily harm by withholding them. Mitchell challenges the sufficiency of the evidence to prove this allegation.[1]

¶7 Due process requires the State to produce sufficient evidence to prove beyond a reasonable doubt every essential element of a crime charged. *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). Evidence is sufficient to support a conviction only if, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). A criminal defendant may not be convicted for an uncharged offense. *State v. Brown*, 45 Wn. App. 571, 576, 726 P.2d 60 (1986).

¶8 The dispute in this case is about the proper interpretation of the statute. The meaning of a statute is a question of law that is reviewed de novo. The court's fundamental objective is to ascertain and carry out the legislature's intent. If the statute's meaning is plain on its face, then courts must give effect to its plain meaning as an expression of what the legislature intended. *State v. J.M.*, 144 Wn.2d 472, 480, 28 P.3d 720 (2001).

¶9 The legislature adopted the criminal mistreatment statute in 1997 after making the following finding:

> The legislature finds that there is a significant need to protect children and dependent persons, including frail elder and vulnerable adults, from abuse and neglect by their parents, by

---

[1] The written findings and conclusions entered by the trial court are sufficient to facilitate appellate review of the exceptional sentence, but the finding underlying the conviction states only "that the defendant is guilty beyond a reasonable doubt of the crime of criminal mistreatment in the first degree as charged in the information." Clerk's Papers at 23. This is insufficient to satisfy the requirement in CrR 6.1(d). *State v. Head*, 136 Wn.2d 619, 622-23, 964 P.2d 1187 (1998). Under *Head*, the failure to enter findings of fact after a bench trial would normally require a remand for the entry of proper findings where the appellant raises the issue. We are not remanding here because Mitchell has not raised the issue and because the lack of detailed findings does not hamper appellate review of the sufficiency of the evidence to prove the crime as charged in the information.

persons entrusted with their physical custody, or by persons employed to provide them with the basic necessities of life. The legislature further finds that such abuse and neglect often takes the forms of either withholding from them the basic necessities of life, including food, water, shelter, clothing, and health care, or abandoning them, or both. Therefore, it is the intent of the legislature that criminal penalties be imposed on those guilty of such abuse or neglect.

RCW 9A.42.005 (in part). "Criminal mistreatment in the first degree" is defined as follows:

A parent of a child, the person entrusted with the physical custody of a child or dependent person, a person who has assumed the responsibility to provide to a dependent person the basic necessities of life, or a person employed to provide to the child or dependent person the basic necessities of life is guilty of criminal mistreatment in the first degree if he or she recklessly, as defined in RCW 9A.08.010, causes great bodily harm to a child or dependent person by withholding any of the basic necessities of life.

RCW 9A.42.020(1).

¶10 Mitchell contends the evidence was insufficient to prove that she withheld basic necessities from a "dependent person," or that the boy was a "dependent person." Mitchell contrasts the statutory definitions of "dependent person" and "child." A "dependent person" means

a person who, because of physical or mental disability, or because of extreme advanced age, is dependent upon another person to provide the basic necessities of life. A resident of a nursing home, as defined in RCW 18.51.010, a resident of an adult family home, as defined in RCW 70.128.010, and a frail elder or vulnerable adult, as defined in [ ]RCW 74.34.020(13), is presumed to be a dependent person for purposes of this chapter.

RCW 9A.42.010(4). A "child" means "a person under eighteen years of age." RCW 9A.42.010(3).

¶11 According to Mitchell, the fact that the statute defines "dependent person" and "child" differently means that

the two terms are mutually exclusive. She cites the rule of construction that says there is a difference in legislative intent where the legislature uses certain statutory language in one instance and different language in another. *State v. Roggenkamp*, 153 Wn.2d 614, 625, 106 P.3d 196 (2005) (the legislature is "deemed to intend a different meaning when it uses different terms"). Since the information used the term "dependent person" to describe a victim who plainly belongs to the category of "child," Mitchell contends she was convicted of an uncharged offense.

¶12 We find nothing in the statute to indicate an intention that a victim must fall into only one category. The statute simply uses the two terms to obtain broad protection for persons who are vulnerable due to youth or dependency or both. RCW 9A.42.020(1) consists of one sentence. The first part defines the four categories of relationships that create potential defendants. The second part makes it a crime to violate the specified relationship by withholding the basic necessities of life. We conclude this meaning of the statute is plain on its face, and it does not foreclose the State from regarding as "dependent" someone who is also a "child."

¶13 The State charged Mitchell under the statute with being "a person who has assumed the responsibility to provide to a dependent person the basic necessities of life." This charge obligated the State to prove that S.A. was dependent upon Mitchell "because of physical or mental disability." Before this court at oral argument, Mitchell took the position that the State's proof was insufficient because no one used the word "disability" when testifying about what was wrong with the boy. But the statute does not provide a definition of "disability," and there is no basis for assuming that the legislature intended it to have a narrow or technical meaning. The statute presumes that certain categories of people, such as residents of nursing homes, are dependent. This does not prevent the State from proving that a person not within those categories is dependent.

¶14 Here, the evidence is ample to support a conclusion that four-year-old S.A. was a dependent person as well as a child. Severely malnourished to the point where his body was beginning to consume itself, he had a physical disability that a normal child of his age does not have. He was physically incapable of getting food for himself because he was too weak to walk. He depended on Mitchell to provide him with the basic necessities of life. Her conviction must be affirmed.

## EXCEPTIONAL SENTENCE

¶15 A standard range sentence for the crime would have been between 31 and 41 months. The court imposed an exceptional sentence on Mitchell of 96 months. The exceptional sentence was based on two findings. The first was that the victim was particularly vulnerable. The second was that the crime was a domestic violence crime manifested by multiple incidents over a prolonged period of time. Mitchell challenges only the finding of particular vulnerability.

¶16 To justify a sentence based on particular vulnerability, the State must prove (1) that the defendant knew or should have known (2) of the victim's particular vulnerability and (3) that vulnerability must have been a substantial factor in the commission of the crime. *State v. Suleiman*, 158 Wn.2d 280, 291-92, 143 P.3d 795 (2006). Mitchell contends the finding of particular vulnerability is not supported by the record. Such a challenge is reviewed under the "clearly erroneous" standard. *State v. Law*, 154 Wn.2d 85, 93, 110 P.3d 717 (2005).

¶17 To be a substantial factor, the victim's disability must have rendered the victim "more vulnerable to the particular offense than a nondisabled victim would have been." *State v. Jackmon*, 55 Wn. App. 562, 567, 778 P.2d 1079 (1989) (broken ankle did not render victim more vulnerable; he was sitting down at the time defendant shot him). Mitchell contends S.A.'s food issues did not make him more vulnerable to mistreatment than any other child

would have been. This argument is without merit. As the trial court observed, the boy was unlike a normal four year old when Mitchell was caring for him. He was preoccupied with food and hoarded it because of his past experience when his mother deprived him of food for several months. The defendants were aware that S.A. had an eating disorder. A social worker had discussed it with them. Yet despite S.A.'s unique vulnerability to food deprivation, Mitchell and Abegg used food deprivation as punishment when S.A. was caught taking food without permission. The boy's statements at the hospital confirm that he was afraid that eating would get him in trouble. We conclude there was ample support for the conclusion that S.A. was particularly vulnerable to the food deprivation Mitchell inflicted upon him.

¶18 The trial court imposed a term of community custody. The State concedes that there is no authority for a term of community custody when a person is convicted of criminal mistreatment in the first degree under RCW 9A.42.020(1). The State also agrees that Mitchell is entitled to credit for time served prior to sentencing. A remand is necessary to allow the trial court to address these issues with a corrected sentence.

¶19 The conviction and exceptional sentence are affirmed. The sentence is remanded for correction as noted above.

Cox and ELLINGTON, JJ., concur.

Review granted at 167 Wn.2d 1001 (2009).