

2014 APR 21 AM 9: 16

# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 69842-7-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| MICHAEL J. EVANS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: April 21, 2014 |

SPEARMAN, C.J. — Evans challenges the exceptional sentences imposed on his convictions for theft of a motor vehicle and trafficking in stolen property in the first degree. He argues first that insufficient evidence supports the jury's finding that the victim was particularly vulnerable and second, that there is no nexus between the victim's vulnerability and the crime of trafficking in stolen property. The State concedes error regarding Evans's second argument. In a statement of additional grounds, Evans argues that the evidence is insufficient to support his convictions and that the sentencing court improperly determined the standard range sentence for his crimes. We accept the State's concession of error regarding the exceptional sentence on the trafficking count and remand for resentencing as to that count. We otherwise affirm.

## FACTS

In September 2011, Lucas lost his wife of 53 years to cancer. Shortly thereafter, he decided to sell her 1999 Cadillac. He determined the "blue book"

value of the car was $4100 and placed a "for sale" sign in the window. At the time, Lucas, was nearly eighty years old and lived by himself. His son was worried about his diminishing cognitive abilities because he would repeat himself and it was difficult to redirect him. Nonetheless, Lucas was able to cook for himself and manage the triplex in which he and two other tenants lived.

The defendant, Michael J. Evans, introducing himself as "Mike Miller," along with a man he identified as his brother, contacted Lucas about the car. Evans took the car for a test drive, along with his "brother" and Lucas. Afterward, they returned to Lucas's apartment and Evans made an offer to buy the car for $3,895, which Lucas accepted. Evans gave Lucas $100 as a down payment, but made no arrangements to pay the balance. Evans's "brother" took the car keys and title off the table and left the apartment. A short time later, Evans also left. Lucas hoped that Evans would return and pay the balance, but he never did. Lucas testified that he had no means by which to contact "Mike" directly about the car after he left his apartment.

A few days after the transaction, Evans called Lucas claiming that the engine of the car had blown up and would cost $5,000 to replace. Lucas never heard from Evans again. Meanwhile, in November 2011, Evans sold the car to a third party for $4,400.

During their initial meeting, Evans had introduced Lucas to Yana Ristick, who he identified as "Anna Miller." 5 Verbatim Report of Proceedings (VRP) (11/1/12) at 46-47. In the weeks following the sale, she made five small car payments—totaling $275—for Lucas's Cadillac. Ristick also convinced Lucas to

lend her money to buy a catering business. In the ensuing months, he gave her more than $300,000 in cash.

In late 2011, Lucas told his son about his sale of the car and his investment in the catering business. Concerned that his father was being swindled, Lucas's son had his father's accounts frozen and contacted the police.

Based on the reports from Lucas's son, police began investigating Evans and Ristick in January 2012. One of the detectives working the case, Detective Pamela St. John, recognized Evans as a known associate of Yana Ristick, who she had investigated for the financial exploitation of several elderly men years earlier. The detective created photo montages containing Evans and Ristick. She asked Lucas to view the montage to see if he could identify the suspects. Lucas chose Ristick's photo immediately and identified her as "Miller." He chose two other photos, one of which depicted Evans, as possible matches for "Mike," the man who took his Cadillac. Evans's subsequent buyer was also able to identify him based on this photo montage.

Meanwhile, Lucas's son had engaged a geriatric evaluator, Karen Taifour, to assess his father's mental capacity. After two visits to Lucas's apartment, the evaluator concluded that Lucas was functioning well, keeping himself and his home in order. But she also noted that Lucas lacked significant insight or judgment about the decisions he was making. In particular, she observed that when she arrived unannounced for her first visit, Lucas opened the door to his apartment, said "[h]i", turned away and began walking down the hall without questioning her as to who she was or why she was there. She testified that

3

because Lucas had allowed a stranger into his home without hesitation, was a "red flag" for her with regard to his vulnerability. 3 VRP (10/30/12) at 82. She diagnosed Lucas with a cognitive disorder with "significant short-term memory problems." 3 VRP at 104; 5 VRP at 5.

The State charged Evans under RCW 9A.50.020(1) with theft of a motor vehicle by color and aid of deception and under RCW 9A.82.050 with first degree trafficking in stolen property.[1] The State also alleged, as an aggravating factor for both crimes, that Lucas was a particularly vulnerable victim under RCW 9.94A.535(3)(b). A jury found Evans guilty as charged, including that Lucas was particularly vulnerable. Relying on the jury's findings, the trial court imposed concurrent, exceptional sentences of 63 months for the theft and 90 months for trafficking. Each sentence exceeded the maximum standard range sentence by six months. Evans appeals.

## DISCUSSION

Evans contends the evidence is insufficient to support the jury's finding that Lucas was particularly vulnerable.[2] We disagree.

In challenges to the sufficiency of the evidence of an aggravating factor, we review the evidence in the light most favorable to the State to determine

---

[1] Ristick was charged as a codefendant with five counts of first degree theft and three counts of second degree theft. Prior to trial, she pleaded guilty as charged. The jury heard testimony regarding her involvement in the vehicle transaction and the $300,000 she obtained from Lucas via the catering business scheme.

[2] Evans also argues that the State failed to show a nexus between Lucas's alleged vulnerability and the crime of trafficking in stolen property. The State correctly concedes error on this issue.

4

whether any rational trier of fact could have found the presence of the aggravating factor beyond a reasonable doubt. State v. Yates, 161 Wn.2d 714, 752, 168 P.3d 359 (2007).

In this case, Evans was charged with theft of a motor vehicle by color and aid of deception, along with the alleged aggravating factor that the victim, Lucas, was particularly vulnerable. To support a finding of particular vulnerability, the State had to prove beyond a reasonable doubt that: (1) Lucas was more vulnerable to Evans' deception than other victims, (2) Evans knew or should have known of Lucas' vulnerability, and (3) the particular vulnerability was a substantial factor in the accomplishment of the crime. State v. Bedker, 74 Wn. App. 87, 94, 871 P.2d 673 (1994); State v. Jones, 59 Wn. App. 744, 752, 801 P.2d 263, 267 (1990); State v. Jackmon, 55 Wn. App. 562, 566, 778 P.2d 1079 (1989). Evans contends that the evidence is insufficient to satisfy these requirements. We disagree.

Viewing the evidence in the light most favorable to the State, as we must, the testimony showed that, at the time of the alleged incident, Lucas was 79 years old and exhibiting signs of diminished mental capacity. A geriatric evaluator testified that Lucas unquestioningly allowed her into his home, without any knowledge of who she was or why she was there, and that he lacked significant insight or judgment about the decisions he was making. Consistent with this testimony, the jury also heard evidence that, on the day of the crime, Lucas allowed a group of strangers into his home, accepted a mere $100 down payment toward the $3895 purchase price of a car, and allowed the men to take

5

the title and keys to his Cadillac without an agreement for paying the remaining amount due. Finally, the jury heard evidence that during this transaction, Evans introduced Lucas to an associate, Yana Ristick by a false name and that Ristick eventually managed to obtain approximately $300,000 in cash from Lucas.

Based on this testimony, there was ample evidence that Lucas was more vulnerable to deception than other potential victims. The circumstances surrounding the commission of the crime also establish that Evans was aware of Lucas's vulnerability and capitalized upon it to accomplish the theft. We conclude that substantial evidence sustains the jury's finding that Lucas was a particularly vulnerable victim beyond a reasonable doubt.

## Statement of Additional Grounds

In a statement of additional grounds for review, Evans raises several challenges to his convictions. First, Evans claims that the arresting officer lacked probable cause to arrest him. But even assuming there was no probable cause for his arrest, Evans does not contend that his trial was tainted by any evidence obtained from him as a result of the alleged unlawful detention. Because, Evans demonstrates no prejudice from the alleged impropriety, the claim is without merit.

Next, Evans challenges the sufficiency of the evidence sustaining his convictions. Evidence is sufficient to support a conviction only if, after viewing the evidence and all reasonable inferences in the light most favorable to the State, a rational trier of fact could find each element of the crime proven beyond a reasonable doubt. State v. Green, 94 Wn.2d 216, 220-21, 616 P.2d 628 (1980).

To convict Evans of theft of a motor vehicle, the State had to prove that he: (1) by color or aid of deception, obtained control over a motor vehicle; (2) intended to deprive the owner of the motor vehicle; and (3) that this act occurred in the State of Washington. RCW 9A.56.020(1)(b); 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 74.02 (3D ED. 2008); State v. Mermis, 105 Wn. App. 738,745, 20 P.3d 1044 (2001). Only the first two elements were disputed in this case. A jury may find "deception" has occurred where an actor knowingly promises performance which the actor does not intend to perform or knows will not be performed. RCW 9A.56.010(5).

With respect to the disputed elements, the jury heard evidence that Evans gave Lucas a false last name, paid only $100 of the $3895 he had agreed to pay for the car and he left the premises with the title, the car and the keys without making any arrangement to pay the balance due. In addition, they heard evidence that Evans never obtained a Bill of Sale to facilitate transfer of title to the car, and never advised Lucas that he sold the car, despite the fact that he still owed Lucas thousands of dollars. Based on this evidence, the jury could reasonably infer that Evans had no intention to make good on his promise to pay for the car. Thus, their finding that Evans was guilty of theft of a motor vehicle by color of deception is supported by substantial evidence.

To convict Evans with trafficking in stolen property, the State had to prove he knowingly trafficked in stolen property, with knowledge that the property was stolen. RCW 9A.82.050(1); 13B SETH FINE & DOUGLAS ENDE, WASHINGTON PRACTICE CRIMINAL LAW § 2617 (2ED. 2013-2014). A person is guilty of trafficking in stolen

7

property in the first degree if he or she knowingly sells stolen property to another person. RCW 9A.82.010(19). As discussed above, the State's evidence established beyond a reasonable doubt that Evans knowingly stole Lucas's car and there is no dispute that Evans subsequently sold the car to a third party. This evidence is sufficient to meet the State's burden of proving the trafficking charge beyond a reasonable doubt.

Finally, Evans contends that the sentencing court erred when it entered the exceptional sentences because it accepted the State's computation of his offender score without conducting a "'same criminal conduct'" analysis on his prior adult convictions, as required under RCW 9.94A.525(5)(a)(i) and 9.94A.589(1)(a). Because Evans failed to raise this issue at the sentencing, the issue is waived on appeal. State v. Jackson, 150 Wn. App. 877, 892, 209 P.3d 553, (2009) (citing In re Pers. Restraint of Shale, 160 Wn.2d 489, 496, 158 P.3d 588 (2007).

Remand for resentencing on trafficking in stolen property count. Otherwise, affirmed.

WE CONCUR:

_Spearman, C.J._

_Schindler, J._

_Appelwick, J._

8