**FILED**
**MARCH 31, 2022**
In the Office of the Clerk of Court
WA State Court of Appeals Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 37871-3-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| WILLIAM HENRY FLETCHER, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — William Henry Fletcher appeals his conviction for first degree assault. We affirm.

BACKGROUND

Mr. Fletcher and Laura Romig were neighbors living in Dayton, Washington. Ms. Romig is a senior who, because of a disability, requires the use of an electric wheelchair for mobility. Ms. Romig often paid Mr. Fletcher to help her with various household tasks.

For several years, the relationship between Ms. Romig and Mr. Fletcher was warm and friendly. But things started to change in 2018. Mr. Fletcher struggled with substance abuse. At times, Mr. Fletcher asked Ms. Romig for money to buy drugs, prompting Ms. Romig to send any money for Mr. Fletcher directly to his landlady. This angered Mr. Fletcher, resulting in an argument on January 5, 2019.

On the morning of January 7, 2019, Mr. Fletcher went to Ms. Romig's home to help with housework. Mr. Fletcher put on gloves and picked up Ms. Romig's laundry. When he returned he put on another pair of gloves and offered to mop the floor. This caused Ms. Romig to feel cautious since she felt gloves were unnecessary to mop the floor. Mr. Fletcher then went into the kitchen, fell to the floor, yelled, and moved like a "floppy fish." 1 Report of Proceedings (RP) (Sept. 3, 2020) at 91. Ms. Romig, a former nurse who specialized in epilepsy, believed Mr. Fletcher was not actually in need of medical assistance.

Mr. Fletcher then arose from the floor and stared directly at Ms. Romig. He crouched down and gave Ms. Romig a look she described as "demonic" and "very scary." *Id*. at 103. Mr. Fletcher ran toward Ms. Romig, then looked around and picked up a lead crystal candle holder with sharp corners. Ms. Romig picked up her phone and attempted to call 911. Mr. Fletcher reached Ms. Romig before she could place the call, knocked the phone out of her hand, and began striking her over the head with the candle holder. Mr. Fletcher hit Ms. Romig on her head, face, mouth, and from behind at least 14 times. She did not yell for help because she thought no one would hear her and feared it could worsen the situation. She fought to maintain consciousness though she reported her pain level as "about an 8 or 9." *Id*. at 108.

2

Eventually, the lead crystal candle holder shattered over Ms. Romig's head and Mr. Fletcher fled the home. Ms. Romig attempted to call 911 but could not hear the dispatcher and had to wait until a neighbor arrived to assist her. Officers soon arrived to find Ms. Romig in the hallway with a large amount of blood on and around her. She had lacerations on her face, head, and mouth. When the officers went across the street to make contact with Mr. Fletcher, they found him unconscious. He had bitten his tongue and had urinated himself. Mr. Fletcher appeared confused about the events and said he did not recall the assault.

Emergency personnel transported Ms. Romig to Dayton General Hospital where she was evaluated for head trauma. Doctors diagnosed her with a nasal bone and dental fracture, concussion with loss of consciousness, and multiple contusions and scalp lacerations. After initial treatment, Ms. Romig was transported by helicopter to Sacred Heart Medical Center in Spokane where she spent just over a week.

Ms. Romig's vision never completely returned after the attack. She also suffered a broken nose, causing breathing issues and loss of smell, and her teeth were either broken or completely knocked out. Ms. Romig also endured hearing loss and now requires hearing aids. Because Ms. Romig no longer feels safe living in Dayton, she moved away and makes her home in Walla Walla.

The State charged Mr. Fletcher with first degree assault. In an amended information, the State also alleged two aggravating circumstances in that Mr. Fletcher exhibited "deliberate cruelty" toward Ms. Romig, and that she was "particularly vulnerable or incapable of resistance." Clerk's Papers (CP) at 157.

Defense counsel successfully moved for a psychiatric evaluation. The evaluation was directed at Mr. Fletcher's sanity, drug use, and capacity to form intent. After receiving the psychiatric evaluation report, defense counsel decided not to present expert testimony at trial.

The case proceeded to trial. During opening statements, defense counsel stated that on the day of the assault "William took a pill because he was not feeling well." 2 RP (Sept, 3, 2020) at 34. Later that day, Ms. Romig testified. The State elicited some testimony regarding Mr. Fletcher's drug and alcohol use. Ms. Romig stated she and Mr. Fletcher talked about drugs and alcohol and that Mr. Fletcher asked her for her prescription drugs. There was no discussion of whether Mr. Fletcher consumed drugs on the day of the assault. Mr. Fletcher objected to the testimony regarding prior drug and alcohol use, arguing it was overly prejudicial. The court sustained two of defense's objections but allowed other testimony about Mr. Fletcher's drug and alcohol abuse.

4

After the State rested, it made a half-time motion to exclude defense references to anything related to a potential involuntary or voluntary intoxication defense. The State asserted the defense had not provided proper notice of the voluntary intoxication defense, and instead had misled the State by pursuing a diminished capacity defense based on Mr. Fletcher's alleged seizures. Defense counsel replied:

> Your Honor, I guess I just didn't realize when I had made that statement and talked about him having taken a pill that that would be considered involuntary intoxication. It seems obvious that that was not where I was going or where Defense was going in this case. Our entire time my entire defense has been . . . that he doesn't remember. And so when I mentioned in opening that Mr. Fletcher had taken a pill it was not my intent to bring up any involuntary intoxication defense. My—it was just to go towards perhaps reasons why he doesn't remember.

1 RP (Sept. 4, 2020) at 166. The court noted that mention of the pill nevertheless "goes towards intent." *Id*. at 167. Defense counsel agreed, replying "yes." *Id*. The court then stated it would treat the State's concerns as a motion in limine to exclude evidence pertaining to a voluntary intoxication defense, and granted the motion.

An "unknown"[1] attendee at the hearing then spoke up and asserted that the State had "opened the door" regarding Mr. Fletcher potentially being intoxicated on the day of the attack. 1 RP (Sept. 4, 2020) at 170. The unknown attendee argued Ms. Romig's

---

[1] When the unknown attendee spoke, defense counsel mentioned that the unknown person was her senior attorney.

statement that Mr. Fletcher looked "demonic" suggested an altered state of mind and

the defense should be allowed to address it with evidence of Mr. Fletcher's drug use. *Id*.

at 171. The court disagreed, stating:

> No, the Court will not do that. The Defense has not put forward that defense.
> They have not called an expert in regards to voluntary/involuntary
> intoxication. So, at this time, I do not find the Defense one is timely, nor is it
> prepared to be put forward in any fashion at this time. If I had a choice of
> continuing or the trial—continuing this trial and doing it again, I decline to
> do neither. At this time, I'm going to direct the Defense to limit that
> questioning.

*Id*. at 172.

Later that day, Mr. Fletcher testified at trial about his memory of the day of the

assault. Mr. Fletcher stated he woke up feeling "[a] little different, not myself." *Id*. at 179.

He recalled going to Ms. Romig's home, talking with her briefly, and beginning his

chores. Mr. Fletcher testified the last thing he remembered was going to grab the mop.

He then felt "auras" and the next thing he recalled was being woken up by a police officer

across the street from Ms. Romig's residence. *Id*. at 180.

The trial court declined to include a jury instruction proposed by Mr. Fletcher

on diminished capacity, stating "it would not be based on the evidence before the court."

1 RP (Sept. 4, 2020) at 200. Mr. Fletcher did not propose a voluntary intoxication

instruction. The court provided jury instructions regarding the aggravating factors of deliberate cruelty and a victim particularly vulnerable or incapable of resistance.

The jury convicted Mr. Fletcher of assault in the first degree and found, via special verdict, that Mr. Fletcher's conduct during the crime was deliberately cruel and that Ms. Romig was particularly vulnerable or incapable of resistance.

At sentencing, Mr. Fletcher's standard range was calculated at 178 to 236 months. The court imposed an above-range sentence of 396 months based on the aggravating factors of deliberate cruelty and a victim particularly vulnerable or incapable of resistance. Mr. Fletcher timely appeals.

## ANALYSIS

*Aggravating factors*

Under the Sentencing Reform Act of 1981, chapter 9.94A RCW, a court generally must impose a standard range sentence. RCW 9.94A.505. However, a court may impose an exceptional sentence outside the standard range if it concludes that "there are substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.535. An aggravating factor may support an exceptional sentence so long as it is proved to a jury beyond a reasonable doubt. RCW 9.94A.535, .537(3). The State presents sufficient evidence to justify an aggravating factor so long as the evidence, viewed in the light most

favorable to the State, could justify a reasonable fact finder to have found the presence of the aggravating factor. *State v. Yates*, 161 Wn.2d 714, 752, 168 P.3d 359 (2007), *abrogated on other grounds by State v. Gregory*, 192 Wn.2d 221, 427 P.3d 621 (2018).

Here, the jury found two aggravating factors: deliberate cruelty and a victim that was particularly vulnerable or incapable of resistance. Mr. Fletcher claims the evidence was insufficient to justify either factor. We discuss each factor in turn.

### Deliberate cruelty

An exceptional sentence may be justified if the defendant's conduct "manifested deliberate cruelty to the victim." RCW 9.94A.535(3)(a). "Deliberate cruelty" requires a showing "of gratuitous violence or other conduct that inflicts physical, psychological, or emotional pain as an end in itself. . . . [T]he cruelty must go beyond that normally associated with the commission of the charged offense or inherent in the elements of the offense." *State v. Tili*, 148 Wn.2d 350, 369, 60 P.3d 1192 (2003).

As charged in this case, a person is guilty of assault in the first degree when that person "[a]ssaults another with a firearm or any deadly weapon or by any force or means likely to produce great bodily harm or death." RCW 9A.36.011(1)(a). Great bodily harm means "bodily injury which creates a probability of death, or which causes significant

serious permanent disfigurement, or which causes significant permanent loss or impairment of the function of any bodily part or organ." RCW 9A.04.110(4)(c).

Mr. Fletcher points out that the concept of great bodily harm "encompasses the most serious injuries short of death." *State v. Stubbs*, 170 Wn.2d 117, 128, 240 P.3d 143 (2010). Because "[n]o injury can exceed [the] level of harm" contemplated by first degree assault under RCW 9A.36.011(1), Mr. Fletcher argues the injuries inflicted on Ms. Romig cannot be characterized as deliberately cruel. Instead, he claims that Ms. Romig's injuries are necessarily contemplated by the crime of conviction.

Mr. Fletcher's argument fails to appreciate the subtle specifics of the deliberate cruelty standard. The focus of the deliberate cruelty aggravator is not the extent of the victim's injuries; it is instead the infliction of psychological and emotional pain. *See Tili*, 148 Wn.2d at 369. Physical injuries, no matter how severe, are not always accompanied by intense pain and emotional suffering. The latter are separate harms that can justify additional punishment under RCW 9A.36.011(1).

Here, Mr. Fletcher did not simply attack Ms. Romig in a way sufficiently serious to cause great bodily harm. He brutalized Ms. Romig so that she experienced severe pain and psychological trauma. Mr. Fletcher terrorized Ms. Romig by beginning his attack with a demonic look. He then knocked the phone out of Ms. Romig's hands when she

tried to call 911 for help. Mr. Fletcher did not end his attack until the candlestick

shattered. Mr. Fletcher's actions were indicative of someone intent on inflicting not just

physical injuries, but gratuitous pain and suffering. Mr. Fletcher's actions went beyond

what is contemplated by RCW 9A.36.011(1). He was deliberately cruel. The jury's

verdict on this measure was justified.

### *Victim particularly vulnerable or incapable of resistance*

An exceptional sentence may also be justified if the victim is "particularly

vulnerable or incapable of resistance." RCW 9.94A.535(3)(b). To justify an exceptional

sentence based on the aggravating factor of particular vulnerability, the State must show

(1) the defendant knew or should have known of the victim's particular vulnerability and

(2) that vulnerability must have been a substantial factor in the commission of the crime.

*See State v. Suleiman*, 158 Wn.2d 280, 291-92, 143 P.3d 795 (2006). Victims who

are advanced in age, disabled, or are alone at the time of the crime may be deemed

particularly vulnerable. *See, e.g.*, *State v. Jones*, 130 Wn.2d 302, 311, 922 P.2d 806

(1996) (advanced age made victim vulnerable); *State v. Phillips*, 160 Wn. App. 36, 38-39,

246 P.3d 589 (2011) (victim who was unable to walk was particularly vulnerable); *State

v. Hicks*, 61 Wn. App. 923, 926, 812 P.2d 893 (1991) (victims who were home alone were

particularly vulnerable). Vulnerability is a substantial factor in the commission of the

crime if the victim's disability rendered them "'more vulnerable to the particular offense than a nondisabled victim would have been.'" *State v. Mitchell*, 149 Wn. App. 716, 724, 205 P.3d 920 (2009) (quoting *State v. Jackmon*, 55 Wn. App. 562, 567, 778 P.2d 1079 (1989)), *aff'd*, 169 Wn.2d 437, 237 P.3d 282 (2010).

Mr. Fletcher does not dispute he knew Ms. Romig was disabled and therefore vulnerable; his argument is that Ms. Romig's vulnerability was not a substantial factor in his crime. According to Mr. Fletcher, his assaultive conduct was so sudden and violent that an able-bodied person would have been no better able to defend themselves than Ms. Romig.

We disagree with Mr. Fletcher's assessment. According to Ms. Romig's testimony, she first suspected something was wrong with Mr. Fletcher when he gave her a demonic look. Mr. Fletcher then looked around and grabbed a lead crystal candle holder. Had she been able bodied, Ms. Romig might have been able to move away or flee before Mr. Fletcher began his attack with the candle holder. But because she was confined to a wheelchair, all Ms. Romig was able to do was try to call 911. The jury was justified in finding Ms. Romig was particularly vulnerable or incapable of resistance for purposes of the sentencing aggravator.

11

*Voluntary intoxication defense*

A criminal defendant has a constitutional right to present a defense. U.S. CONST. amends. V, VI, XIV; WASH. CONST. art. I, §§ 3, 22; *State v. Blair*, 3 Wn. App. 2d 343, 349, 415 P.3d 1232 (2018). However, this right is not absolute. It does not extend to irrelevant or inadmissible evidence. *Blair*, 3 Wn. App. 2d at 349. The defendant's right to present a defense is subject to "established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973). We review a trial court's decision regarding whether to exclude evidence for abuse of discretion. *State v. Atsbeha*, 142 Wn.2d 904, 914, 16 P.3d 626 (2001).

Mr. Fletcher contends the trial court violated his constitutional right to present a defense when it barred him from presenting or eliciting testimony regarding voluntary intoxication. We disagree.

The only evidence excluded by the court was testimony about Mr. Fletcher ingesting an unidentified pill on the morning of the assault. The defense made no proffer of evidence about the nature of the pill that was mentioned during opening statement or whether the pill caused Mr. Fletcher any immediate reaction. Without more information,

nothing but speculation suggested the pill caused Mr. Fletcher to become intoxicated. The trial court acted within its discretion in excluding evidence of the pill.

Apart from the excluded evidence regarding the pill, nothing in the trial record suggested Mr. Fletcher was voluntarily intoxicated at the time of the assault. While there was evidence of Mr. Fletcher's prior drug use, it was not contemporaneous to his offense. At trial, Mr. Fletcher did not request a jury instruction on voluntary intoxication[2] and he objected to the State's references to his past drug use.[3]

Given the speculative nature of the lone fact proffered by Mr. Fletcher of taking an unidentified pill, the record fails to show Mr. Fletcher was denied the opportunity to present a defense. Regardless of whether the trial court erroneously believed pretrial notice or expert witness testimony was required for voluntary intoxication evidence, it was not an abuse of discretion for the trial court to exclude evidence at trial regarding Mr. Fletcher's ingestion of the unidentified pill.

---

[2] Mr. Fletcher's request for a diminished capacity jury instruction was denied, but that ruling has not been appealed.

[3] When the State mentioned that Mr. Fletcher had been trying to get drugs from Ms. Romig, the defense objected that "[a]ny references to alcohol or drugs was stricken from the record and Mr. Fletcher did not admit on—on the record to having used drugs." 1 RP (Sept. 4, 2020) at 224.

CONCLUSION

The judgment and sentence is affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Pennell, J.

WE CONCUR:

_____
Fearing, J.

14

No. 37871-3-III

LAWRENCE-BERREY, A.C.J. (dissenting in part) — I agree with the majority

except its analysis of the "deliberate cruelty" aggravator issue.

The Sentencing Reform Act of 1981, chapter 9.94A RCW, gave judges limited

discretion to sentence a felony offender above the standard sentencing range by including

a list of aggravating circumstances, any one of which permitted an exceptional sentence.

*State v. Tili*, 148 Wn.2d, 350, 368, 60 P.3d 1192 (2003). The *Tili* court emphasized this

limited discretion when noting:

> Exceptional circumstances must *truly distinguish* the crime from others of
> the same category. [T]hose factors that are inherent in the particular class
> of crimes at issue may not serve to distinguish defendant's conduct from
> what is "typical" for that crime and may not, therefore, serve as justification
> for an exceptional circumstance.

*Id.* at 369 (emphasis added) (citations omitted). *Tili* thus requires us to determine what

factors are inherent or typical in the particular class of crimes and whether exceptional

circumstances are present that truly distinguish the crime from others in the same

category.

A person is guilty of assault in the first degree when that person, "with intent

to inflict great bodily harm . . . [a]ssaults another and inflicts great bodily harm."

Former RCW 9A.36.011(1)(c) (1997). "Great bodily harm" includes "bodily injury . . .

which causes significant serious permanent disfigurement, or which causes a

significant permanent loss or impairment of the function of any bodily part or organ."

RCW 9A.04.110(4)(c). "Great bodily harm" is typically accompanied by intense pain

and emotional suffering.

The majority attempts to distinguish this case from a typical assault in the first degree by noting that Mr. Fletcher's assault inflicted "intense pain and emotional suffering." Majority opinion at 9. This is not a valid distinction because assault in the first degree typically is accompanied by intense pain and emotional suffering. I would conclude that "intense pain and emotional suffering" do not "truly distinguish [assault in the first degree] from others of the same category." *Tili*, 148 Wn.2d at 369.[1]

Here, the State did not present any evidence of deliberate cruelty other than injuries consistent with the charged degree of assault. For this reason, I would affirm but remand for resentencing without the deliberate cruelty aggravator.[2]

The majority reaches a different conclusion by misapplying *Tili*. Instead of asking whether assault in the first degree is typically accompanied by intense pain and emotional suffering, the majority asks whether "[p]hysical injuries, no matter how severe, are [ ] always accompanied by intense pain and emotional suffering." Majority opinion at 9. Because the majority misapplies *Tili*, I dissent.

_____
Lawrence-Berrey, A.C.J.

---

[1] The majority also attempts to distinguish this case from a typical assault in the first degree by noting that Mr. Fletcher began his attack with a demonic look and struck his victim repeatedly. These are not valid distinctions either.

[2] The State argues that resentencing is not required because the trial court would have entered a similar sentence even without the deliberate cruelty finding. The record does not support this argument.