IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32548-2-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GEORGE WALTER LEWIS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, C.J. — A jury found George Lewis guilty of first degree burglary and fourth degree assault. At trial, the court excluded evidence of two previous violent altercations between Mr. Lewis and Brent Harwood, one of the victims. On appeal, Mr. Lewis argues that, by excluding the evidence, the trial court violated his Sixth Amendment right to present a defense—specifically the "defense of another." Mr. Lewis also argues that he received ineffective assistance of counsel when his trial counsel did

not request an instruction on defense of another. Because evidence of the two altercations was irrelevant, the court did not err in excluding it.

Likewise, because insufficient evidence existed to support an instruction on defense of another, counsel's failure to request such an instruction did not amount to ineffective assistance of counsel. We affirm.

## FACTS

A jury found George Lewis guilty of first degree burglary and fourth degree assault based on events that happened at Kari Chapman's apartment early on the morning of October 19, 2013.

Prior to the events that led to this case, Mr. Lewis and Ms. Chapman had dated for 12 years. They broke up in June 2013, and at some point thereafter Ms. Chapman began dating Brent Harwood. However, on October 16 or 17, Ms. Chapman met Mr. Lewis at his motel to discuss dating again. Mr. Lewis also claims that at this time Ms. Chapman told him that she and Mr. Harwood had been arguing and that he had been showing up at her apartment without her permission.

On October 18, Ms. Chapman and Mr. Lewis texted about going to Spokane together that day. Instead, Mr. Lewis ran a pool tournament that evening. He texted Ms. Chapman between 11:00 p.m. and midnight, but she did not respond to him because she was annoyed about his change of plans. According to Ms. Chapman, after she did not

2

respond, he sent her a text that was "snide." Report of Proceedings (RP) at 210. Neither of them attempted any further communication with the other that night.

Sometime between midnight and 2:00 a.m. on the morning of October 19, Mary Spencer (Ms. Chapman's neighbor), called Mr. Lewis to tell him his lost coat was at her apartment. Consequently, Mr. Lewis stopped by Ms. Spencer's apartment on his way home from the pool tournament. Two of his friends from the pool tournament were with him. Ms. Spencer met Mr. Lewis on the outside stairwell with his coat, and, according to Mr. Lewis, told him that Mr. Harwood and Ms. Chapman had been arguing in her apartment earlier. Ms. Spencer testified at trial that she could not remember if Mr. Harwood and Ms. Chapman had been arguing that evening, but that Mr. Lewis "was always worried about Kari, because of all the fights." RP at 119. Ms. Spencer also testified that she did not tell Mr. Lewis that she was concerned about Ms. Chapman.

Mr. Lewis went to Ms. Chapman's apartment and knocked. He claims he was concerned for Ms. Chapman's safety. Mr. Harwood opened the door slightly, and then quickly shut and dead bolted it. Mr. Lewis walked back down to his truck, but then decided to go back. He did not contact law enforcement about his concerns. He testified that though he did not ask his two friends to come with him, they followed him up the stairs. He knocked twice at the door and then one of his friends kicked the door in. That friend, allegedly unbeknownst to Mr. Lewis, had brought with him a baseball bat and an Airsoft gun that Mr. Lewis kept in his car.

3

Mr. Lewis and Mr. Harwood disagree on what happened next. Mr. Lewis testified that he went straight into the bedroom where Mr. Harwood was hiding with a knife, and that Mr. Harwood closed the door and cornered Mr. Lewis. Mr. Lewis's friend tried to push in the door to help him.

Mr. Harwood, on the other hand, testified that he was in Ms. Chapman's bedroom when he heard the front door being kicked in. Mr. Lewis then attempted to enter Ms. Chapman's bedroom. Mr. Harwood attempted to keep Mr. Lewis out by leaning on the door, but Mr. Lewis and his friend eventually forced their way in. According to Mr. Harwood, he took out his knife to protect himself and used a curtain rod to keep Mr. Lewis and his friend at bay. He testified that Mr. Lewis threatened to beat him up, and eventually struck him in the head.

Mr. Lewis and Mr. Harwood both agree that Ms. Chapman was in the bathroom down the hall this entire time. Mr. Lewis claims he decided to leave when he realized his friends had turned the situation into something that Mr. Lewis had no intention of it becoming, and when he realized Ms. Chapman was upset with him and not with Mr. Harwood. Ms. Chapman told Mr. Lewis she was going to call the police. As Mr. Lewis was leaving the apartment he responded that what had happened was all Ms. Chapman's fault, and he pushed her backwards into the bathtub.

The police located Mr. Lewis on November 22, 2013. Officer Adam Munro, the arresting officer, testified that Mr. Lewis told him that he had kicked in the door at Ms.

4

Chapman's apartment and that he had been there to make sure she was okay. He also said he had beaten Mr. Harwood up. Mr. Lewis later denied making any of these statements to Officer Munro. Mr. Lewis was charged with fourth degree assault for striking Mr. Harwood, and with first degree burglary.

During trial, the State made a motion in limine to exclude two prior altercations between Mr. Lewis and Mr. Harwood. The first occurred in mid-July of 2013. According to Mr. Lewis, he had knocked on Ms. Chapman's apartment door and Mr. Harwood had opened it and said, "step the fuck away from me or I'll fucking stab you." RP at 27. Ms. Chapman does not appear to have been present on this occasion. The second altercation occurred on August 4, 2013. Mr. Lewis and Ms. Chapman were sitting in Mr. Lewis's car. Mr. Harwood saw them together and told Ms. Chapman to get out of the truck or he was going to smash it. She did not get out of the truck, and Mr. Harwood smashed all the windows out of the truck with a crowbar. He injured Ms. Chapman in the process, requiring her to get seven stitches. Ms. Chapman told the defense investigator that this situation had been a "pissing match between the two boys," and that Mr. Harwood had not been trying to hit or hurt her. RP at 191.

At trial, Mr. Lewis sought to introduce evidence of these two altercations to support his assertion that he was acting in defense of Ms. Chapman. The trial court excluded this evidence, finding that no evidence supported its admission because Mr. Lewis denied committing the very acts on the night of the charged offenses that would

5

have been justified by such a defense. The court instructed the jury on self-defense, but not on defense of another. Mr. Lewis appeals.

## ANALYSIS

On appeal Mr. Lewis argues that by excluding the evidence the trial court effectively barred him from presenting his defense in violation of the Sixth Amendment. He also argues he received ineffective assistance of counsel because counsel did not ask the court to instruct the jury on defense of another.

### I. Sixth Amendment Right to Present a Defense

Mr. Lewis contends the trial court violated his Sixth Amendment right to present a defense when it excluded evidence of his two prior altercations with Mr. Harwood.

A claimed violation of the Sixth Amendment right to present a defense is reviewed de novo. *State v. Jones*, 168 Wn.2d 713, 719, 230 P.3d 576 (2010). Under the Sixth Amendment, "'[t]he right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations.'" *Id.* at 720 (quoting *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973)). "A defendant's right to an opportunity to be heard in his defense . . . is basic in our system of jurisprudence." *Id.*

That right is not absolute, however. *Id.* For evidence to be admissible it must be at least minimally relevant. *State v. Darden*, 145 Wn.2d 612, 621, 41 P.3d 1189 (2002).

6

To be relevant, evidence must tend to prove or disprove the existence of a fact that is of consequence to the outcome of the case, including facts that provide evidence of any element of a defense. ER 401; *State v. Weaville*, 162 Wn. App. 801, 818, 256 P.3d 426, *review denied*, 173 Wn.2d 1004, 268 P.3d 942 (2011). A trial court's ruling on the admissibility of evidence will be reversed only where it abused its discretion. *Darden*, 145 Wn.2d at 619. A trial court abuses its discretion when its ruling is "manifestly unreasonable or exercised on untenable grounds or for untenable reasons." *State v. Lord*, 161 Wn.2d 276, 283-84, 165 P.3d 1251 (2007).

"[I]f relevant, the burden is on the State to show the evidence is so prejudicial as to disrupt the fairness of the fact-finding process at trial." *Darden*, 145 Wn.2d at 622. Relevant evidence may only be withheld where the State's interest in excluding the evidence outweighs the defendant's need for the evidence. *Jones*, 168 Wn.2d at 720. Where evidence is highly probative "'it appears no state interest can be compelling enough to preclude its introduction consistent with the Sixth Amendment.'" *Id.* at 720-21 (quoting *State v. Hudlow*, 99 Wn.2d 1, 16, 659 P.2d 514 (1983)); *see also State v. Young*, 48 Wn. App. 406, 413, 739 P.2d 1170 (1987) ("ER 403 does not extend to the exclusion of crucial evidence relevant to the central contention of a valid defense.").

Under ER 404(b), evidence of prior bad acts—even if relevant and highly

7

probative—will not be admitted to show that on the occasion in question a person acted in conformity with a specific character trait. ER 404(b). Such evidence may, however, be admissible for other reasons, such as to show the defendant had a reasonable apprehension of danger—a necessary element of the defense of "defense of another." 5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 404.6 (5th ed. 2007); ER 404(b). For evidence to be admissible under ER 404(b), the trial court must "'(1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect.'" *State v. Foxhoven*, 161 Wn.2d 168, 175, 163 P.3d 786 (2007) (quoting *State v. Thang*, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002)).

In Washington, use of force to defend a third party is justified to the same extent that it is justified if the actor were defending himself. *State v. Penn*, 89 Wn.2d 63, 66, 568 P.2d 797 (1977). For the jury to be instructed on this defense, the defendant must not only have been subjectively afraid, but must also produce some evidence that his apprehension of great bodily harm or imminent danger was reasonable. *State v. Werner*, 170 Wn.2d 333, 337, 241 P.3d 410 (2010); *State v. Janes*, 121 Wn.2d 220, 238, 850 P.2d 495 (1993). Whether a defendant had a reasonable apprehension is evaluated "from the standpoint of the reasonably prudent person, knowing all the defendant knows and seeing

8

all the defendant sees." *Id.* Accordingly, "the jury is to consider the defendant's actions in light of *all* the facts and circumstances known to the defendant, even those substantially predating the killing." *Id.* A person may not claim defense of another if he denies the acts that the defense would justify. *State v. Aleshire*, 89 Wn.2d 67, 71, 568 P.2d 799 (1977).

Here, Mr. Lewis claims that evidence of the two altercations between himself and Mr. Harwood was essential to his ability to show he had a reasonable apprehension of danger to Ms. Chapman. We conclude that the trial court did not abuse its discretion in excluding evidence of the two altercations because the evidence is irrelevant.

First, the two prior acts are not relevant in negating the intent element of first degree burglary because Mr. Lewis denies the actions that the defense of another would justify. Mr. Lewis denied at trial that he had the intent necessary to be convicted for first degree burglary. Likewise, Mr. Lewis denied using force (besides pushing Ms. Chapman into the bathtub, and he cannot argue that he pushed her out of a reasonable apprehension for her safety). He testified that he did not ask his two friends to come with him or for one of them to kick in the door, and that he did not know they had brought the baseball bat and Airsoft gun with them. He cannot claim that he used force in defense of another and at the same time deny using force, one of the necessary elements for proving the defense. *Penn*, 89 Wn.2d at 66. Where Mr. Lewis was not entitled to assert the defense, evidence of the prior two bad acts are irrelevant and inadmissible.

9

Second, the two prior acts are irrelevant because Mr. Lewis's evidence showed that he was acting in self-defense, not in defense of another. Mr. Lewis was charged with assault in the fourth degree for striking Mr. Harwood on the head. However, Mr. Lewis's testimony alone shows that if he was indeed acting out of fear, it was fear for his own safety and not for Ms. Chapman's. Mr. Lewis testified that when he entered the house, he went straight to the bedroom, where he encountered Mr. Harwood with a knife. At that time, Ms. Chapman was in the bathroom down the hall. The entire altercation happened while Ms. Chapman was outside the bedroom. Accordingly, it is not plausible that Mr. Lewis struck Mr. Harwood on the head out of a reasonable apprehension for Ms. Chapman, who was not even in the room. Rather, Mr. Lewis appears to have acted out of self-defense because Mr. Harwood had trapped him in the bedroom with a knife. And the jury received an instruction on self-defense.

Finally, Mr. Lewis would not have benefitted even if the trial court had instructed the jury on defense of another. *Washington Pattern Jury Instruction* § 17.02 reads:

> The use of force upon or toward the person of another is lawful when used by someone lawfully aiding a person who he reasonably believes is about to be injured in preventing or attempting to prevent an offense against the person, and when the force is not more than is necessary.

11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL § 17.02, at 253 (3d ed. 2008). In defending against the burglary charge, Mr. Lewis denied that he asked his friends to come with him, that he kicked in the door or asked his friend

10

to do so, or that he brought the baseball bat or Airsoft gun. In defending against the charge of fourth degree assault, Mr. Lewis never admitted that he struck Mr. Harwood. Because he denies all of those acts of force, he cannot prove he acted in defense of another.

Likewise, because Mr. Lewis and Mr. Harwood were alone in the bedroom, Mr. Lewis would have been unable to show he acted out of fear for Ms. Chapman's safety. The trial court did not err in excluding the evidence, and as a result, Mr. Lewis was not deprived of his Sixth Amendment right to present a defense.

## *II. Ineffective Assistance of Counsel*

Mr. Lewis argues he received ineffective assistance of counsel because his attorney did not ask the court to instruct the jury on the defense of another. A claim of ineffective assistance of counsel is a mixed question of law and fact and is reviewed de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prevail on a claim of ineffective assistance of counsel, a defendant must prove (1) defense counsel's representation fell below an objective standard of reasonableness and (2) the deficient representation prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). The claim fails if the defendant fails to satisfy either prong. *State v. Thomas*, 109 Wn.2d 222, 226, 743 P.2d 816 (1987). There is a strong presumption that counsel performed effectively. *Strickland*, 466 U.S. at 689.

11

Here, the record shows that Mr. Lewis denied the acts that would have been justified by the defense. As such, the evidence did not support an instruction on defense of another, and counsel cannot be held ineffective for not asking the court to instruct the jury on it. Similarly, Mr. Lewis cannot show that the absence of a jury instruction on defense of another prejudiced him where he would have been unable to establish a necessary element of the defense. Mr. Lewis did not receive ineffective assistance of counsel.

### *III. Statement of Additional Grounds*

In a pro se statement of additional grounds, Mr. Lewis asserts Mr. Harwood broke into Ms. Chapman's apartment on the morning of October 19, 2013, and that the State has police pictures of the break-in. He also states Ms. Chapman told the prosecutor that Mr. Harwood had broken into her apartment that morning. Mr. Lewis argues that this evidence was important to his defense and should have been considered.

"[R]eview of a case on appeal is limited to matters in the record." *State v. Norman*, 61 Wn. App. 16, 27, 808 P.2d 1159 (1991). The issue presented by Mr. Lewis involves factual allegations outside the record on this appeal. His remedy is to seek relief by personal restraint petition. *Id.* at 27-28.

Affirm.

12

No. 32548-2-III
*State v. Lewis*

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Siddoway, C.J.

WE CONCUR:

Fearing, J.

Lawrence-Berrey, J.