[No. 44730. En Banc. September 15, 1977.]

THE STATE OF WASHINGTON, *Respondent,* v. ELMER
RAY PENN, *Appellant.*

*Jack Richey,* for appellant.

*Christopher T. Bayley, Prosecuting Attorney,* and *Charles S. Hamilton III, Deputy,* for respondent.

DOLLIVER, J.—Appeal was made to the Court of Appeals, Division One, following a guilty verdict in a jury trial on a second–degree assault charge. We accepted certification to determine whether the trial court erred in giving or refusing to give certain instructions.

In September 1975, Elmer Ray Penn, 21 years of age, and three of his brothers went to Dahl Field in Seattle to watch a fourth brother play bantam football for the Wedgewood team against the Red Shield team. The age of the players

on both teams ranged from 12 to 16 years. An after–game scuffle ensued involving players of both teams, coaches and fans as participants; it resulted in the injury of one T. L. Cannon. According to the State's witnesses, appellant was an aggressor throughout the affray and was in a position to see that his brother was an aggressor toward Cannon's son. Defendant contends he initially was not an aggressor and did not want to get involved in a fight, but saw T. L. Cannon wielding a football helmet and chasing his brother. He took a piece of metal from his car and struck Cannon from behind, fracturing his skull and severely injuring him.

The appellant assigns error to the following instruction given by the trial court:

Although a person may use force in the defense of another person, the intervening person has no greater rights than the party imperiled. In that regard the intervening party has the right to use force to the extent that the party assisted had the right to use force on his own behalf.

The appellant contends that the proper instruction was appellant's proposed instruction No. 8. Paragraph 3 of that instruction reads:

The test is not what the facts actually were, but whether the circumstances as they appeared to the defendant made it reasonably necessary for him to protect himself, or another. The apprehension of danger must be reasonable, and this reasonableness is for the jury to determine.

Appellant claims that the court's instruction does not allow for a mistake of fact and may leave a defender guilty of a serious crime although he acted entirely without mens rea. Appellant testified that he had no knowledge that his brother had attacked Cannon's son nor that Cannon was pursuing Penn's brother in defense of his son. From Penn's point of view, Cannon was the aggressor. This testimony, as given by the defendant, provides substantial evidence to support his proposed instruction. *See State v. Kubicek,* 5 Wn. App. 293, 486 P.2d 1098 (1971).

The respondent relies upon *State v. Tribett,* 74 Wash. 125, 132 P. 875 (1913), in support of its position that one who comes to the defense of another stands in the shoes of that person, that the intervening person has only the rights of the person who was imperiled. *Tribett* involved a fact pattern which is wholly different and readily distinguishable from the circumstances in this case. That case rose from an altercation between a streetcar conductor (the defendant) and two passengers, a man and his son. The two approached the conductor who shot and killed them both. The issues presented were whether the conductor was acting in self–defense and whether the father was a lawful aggressor in assisting his son. In *Tribett,* the victim (the father), if anyone, was acting in the defense of another (his son). Here, the defendant claims to be acting in the defense of another. In *Tribett,* the following instruction was given on pages 130–31:

> If the father, seeing his son assaulted or menaced with great danger to life, under circumstances such as are calculated to create in the mind of the father a well–grounded belief that the son is in danger of some great personal injury, then such father, if he actually and in good faith believes the life of such son to be in danger, has a right to use such force as may at the time under all the circumstances reasonably seem necessary to prevent the threatened danger to his son."

This instruction is consistent with the position taken by the appellant. Later in the opinion, however, the court stated that "one who goes to the defense of another stands in the shoes of him he seeks to defend." *State v. Tribett, supra* at 131. This comment was made in regard to the necessity for the aggressor to retreat. No similar issue has been raised in the instant case. Nevertheless, to the extent *Tribett* is inconsistent with the position taken here, it is overruled.

The fault with the instruction given by the trial court is that it leaves a defender to act at his peril when defending another who may be either an innocent victim or an unlawful participant. While he may be seeking to defend an innocent victim from a felonious assault, the law would deal

with him as a willing participant in a brawl. *See* R. Perkins, *Criminal Law* 1020–21 (2d ed. 1969). The result may be that an innocent person is injured without receiving assistance from bystanders since bystanders would be hesitant to defend until they had determined who was at fault. *See* 2 W. Burdick, *Law of Crime* § 437 (1946).

■ We now adopt the American Law Institute's Model Penal Code § 3.05(1) (Adopted 1962), "Use of Force for the Protection of Other Persons," which reads:

(1) Subject to the provisions of this Section and of Section 3.09 [Mistake of Law as to Unlawfulness of Force or Legality of Arrest; Reckless or Negligent Use of Otherwise Justifiable Force; Reckless or Negligent Injury or Risk of Injury to Innocent Persons], the use of force upon or toward the person of another is justifiable to protect a third person when:

(a) the actor would be justified under Section 3.04 [Use of Force in Self–Protection] in using such force to protect himself against the injury he believes to be threatened to the person whom he seeks to protect; and

(b) under the circumstances as the actor believes them to be, the person whom he seeks to protect would be justified in using such protective force; and

(c) the actor believes that his intervention is necessary for the protection of such other person.

While respondent suggests that section 3.09 of the code provides that an erroneous belief may vitiate the defense, this section applies to mistakes of law regarding the unlawfulness of force or legality of an arrest. It specifically does not include mistakes of fact. *See* Model Penal Code § 3.09, Comments (Tent. Draft No. 8, 1958).

Additionally, however, we would require that the apprehension of danger as perceived by the actor be reasonable under the circumstances. *See State v. Wanrow,* 88 Wn.2d 221, 559 P.2d 548 (1977); *State v. Miller,* 141 Wash. 104, 250 P. 645 (1926); *State v. Ellis,* 30 Wash. 369, 70 P. 963 (1902); *People v. Maine,* 166 N.Y. 50, 59 N.E. 696 (1901); *State v. Chiarello,* 69 N.J. Super. 479, 174 A.2d 506 (1961).

We are aware this approach may cause an innocent person who is striking in self–defense, to be harmed with impunity merely because appearances were against him. However, we consider this to be a lesser evil than allowing an innocent defender who is acting under a mistake of fact to be convicted of a serious crime.

We reverse and remand for a new trial consistent with this opinion.

WRIGHT, C.J., and ROSELLINI, HAMILTON, STAFFORD, UTTER, BRACHTENBACH, HOROWITZ, and HICKS, JJ., concur.