235 P.3d 842 (2010)
STATE of Washington, Respondent,
v.
Steven Thomas SKUZA, Appellant.
No. 38042-1-II.
Court of Appeals of Washington, Division 2.
July 14, 2010.
As Amended July 20, 2010.
*843 Kathryn A. Russell Selk, Russell Selk Law Office, Seattle, WA, for Appellant.
Thomas Charles Roberts, Attorney at Law Kimberley Ann Demarco, Pierce County Prosecutor's Office, Tacoma, WA, for Respondent.

PART PUBLISHED OPINION
QUINN-BRINTNALL, P.J.
¶ 1 A jury found Steven Skuza guilty of third degree assault, fourth degree assault, first degree driving with a license suspended, and bail jumping. Skuza appeals, arguing that (1) police improperly commented on his right to remain silent, (2) the prosecutor committed misconduct during closing argument, and (3) his sentence exceeds the statutory maximum. In his statement of additional grounds for review (SAG),[1] Skuza raises numerous challenges, including that the trial court improperly excluded testimony from a bail bonds employee, thereby depriving him of his due process right to present a defense to the bail jumping charge. Although Skuza's primary issues and most of his SAG issues lack merit as addressed in the unpublished portion of this opinion, his challenge to the exclusion of the bail bonds employee's testimony is well taken and we address it in the published portion of this opinion. Accordingly, we affirm Skuza's assault convictions,[2] but we reverse the bail jumping conviction and remand for further proceedings.

FACTS
¶ 12 On August 9, 2007, Skuza drove Sheila Anson home from a narcotics anonymous meeting. Angry and upset that she had refused to follow the narcotics anonymous program correctly, Anson estimates that Skuza punched her face and head approximately 15 to 20 times while he drove.
¶ 3 Another motorist, Monte Edenfield, saw Skuza hit Anson several times as their *844 cars passed each other when they crossed some railroad tracks. Edenfield made a u-turn and followed Skuza. Edenfield testified that he saw Skuza's van jerk several times and that through the van's back window he could see Skuza hitting Anson. Anson testified that during the drive, Skuza referenced a car following them and said, "Now look at what you did," and hit her. 3 Report of Proceedings (RP) at 88. Edenfield called 911 and relayed the van's license plate number. At the 911 operator's request, Edenfield ended his pursuit. Skuza ultimately drove to his father's Lakewood home.
¶ 4 Officer Brian Weekes of the Lakewood Police Department arrived at Skuza's father's home where he stopped Skuza's van as it backed out of the driveway, approached the driver's side of the van, and asked Skuza for his driver's license. Skuza replied that he did not have a driver's license. Anson was in the passenger's seat and Weekes noted that she appeared "very scared" and was "shaking and crying." 4B RP at 214.
¶ 5 The next sequence of events was hotly disputed at trial. However, all the parties agreed that there was little space between the driver's side of the van and another parked car in the driveway.
¶ 6 According to Officer Weekes, he ordered Skuza to exit the van and Skuza refused to comply and began reaching under his seat. Weekes then ordered Skuza to "get his hands out from underneath the seat" and, when Skuza failed to comply, Weekes grabbed his arm, pulled him out of the van, and ordered him to the ground. 4B RP at 218. Once Weekes got Skuza out of the van, Skuza continued to resist arrest, pushing Weekes in the chest and into the side of the van, but he eventually complied when Weekes threatened to use pepper spray.
¶ 7 According to Skuza, he tried to locate his "I.D." in the middle console of the van, but he could not have reached under his seat because it is "all plasticed [sic] in." 4B RP at 269. He denied pushing Officer Weekes and claimed that he had tried to comply with Weekes's orders but was rushed and that there was not enough room to comply until he got behind the back of the van. Skuza's father described the events as Skuza had described them, but he did not say anything about any of the verbal exchanges between Weekes and his son.
¶ 8 According to Anson, Officer Weekes "had an attitude toward [Skuza] right at the get go." 3 RP at 113. She stated that Skuza looked for his license on the van's console, never looked under his seat, and tried to comply with Weekes's requests. Anson stated she did not see Skuza strike or kick Weekes.
¶ 9 Lucas Sarysz, a civilian ride-a-long in Officer Weekes's car, also witnessed the 15 to 20 second struggle between Skuza and Weekes and heard Skuza saying that he would cooperate. He saw Skuza "throw a swing" at Weekes that failed to connect. 4B RP at 200. Because Sarysz was sitting in the police car during the incident, he could not hear the initial verbal exchanges regarding the driver's license request.
¶ 10 Ultimately, Officer Weekes handcuffed Skuza, placed him in a patrol car, and spoke with Anson. Weekes reported seeing bruising and two hematomas on the back of Anson's head. But Anson refused medical attention, photographing of her injuries, or to provide a written statement.
¶ 11 On August 14, 2007, the Pierce County Prosecuting Attorney's office charged and the Pierce County Superior Court arraigned Skuza on one count of third degree assault of a police officer and one count of fourth degree assault on Anson. Skuza signed and received a copy of a scheduling order that directed him to appear in court at 8:30 AM on August 30, 2007. Skuza failed to appear on August 30, 2007, as ordered, and the trial court issued a bench warrant. On April 28, 2008, the State amended Skuza's charges, adding one count of first degree driving with a license suspended and one count of bail jumping.
¶ 12 Trial commenced on June 18, 2008. Skuza moved to suppress statements that he made to Officer Weekes before he received his Miranda[3] warnings. The trial court concluded that Skuza's statements were spontaneous *845 and voluntary and denied Skuza's suppression motion.
¶ 13 The State moved to limit testimony from Laurie Spencer, Skuza's bail bondsperson, regarding Skuza's reasons for failing to appear at the August 30, 2007 hearing. Spencer was expected to testify that Skuza had contacted her after missing the hearing and explained that he had missed the hearing because he had complied with a conflicting court order in a different case. The trial court reserved judgment on the State's motion to limit Spencer's testimony until Skuza provided authority that "confusion" of how to comply with multiple court orders qualified as an affirmative defense to bail jumping.
¶ 14 On June 19, the trial court held an emergency bail reconsideration hearing after Anson revealed that Skuza contacted her the night before and attempted to influence her testimony. Pierce County Sheriff's Detective Kevin Johnson interviewed Anson. Johnson testified that Anson had told him that Skuza wanted her to testify "that he was not driving" and then started crying, saying, "There's more but I'm not going to get him in trouble." 2 RP at 50-51. The trial court revoked Skuza's bail and entered an order prohibiting him from having future contact with Anson.[4] At trial, Anson testified that Skuza had contacted her and attempted to influence her testimony.
¶ 15 On June 24, Skuza was scheduled to call bail bondsman Spencer as a witness. Before the trial court reconvened, the trial judge revealed that the previous night he had personally overheard Spencer and Skuza discussing Spencer's upcoming testimony:
THE COURT: It's always ait may not appear, being a judge, that it requires that you do things that are hard on all of us. But I need to start off by bringing up to the defense, as well as the prosecutor's attention, what occurred last night. I'm saying what I'm saying because I expect defense counsel to, or the defense to put the testimony on of the bail bondsman person this morning.
When we left the courtroom last night, I walk[ed] out on the Nollmeyer side and as you come to the corner of the building, the smoking section is on the right side of the building. I walk out, I come to the corner and as I come to the corner, [Skuza] is talking to the bail bond[s]man. They are smoking and I distinctly heard the bail bondsman say, well, I'm going to testify to this and that, to [Skuza].
That brings up an important point in why we exclude witnesses, so they don't discuss what the testimony is from one to the other. It brings up the concern that I have. You exclude witnesses, you don't discuss what one testified to or the other testified to. You come in, you give your evidence and you're out. But it was apparent to me that the discussion between the defendant and the bail bondsman was as to what the bail bondsman was to testify to. I'm concerned.
I bring that upwell, counsel, do you have anything you want to say, [defense counsel]? I know you're just being apprised of this right now. I'm sorry about that. That's what happened.
[DEFENSE COUNSEL]: If she's telling himthey are not necessarily colluding as to what their testimony is going to be. If she's just simply telling Mr. Skuza what her testimony will be, I'm not sure what I don't know what the ramifications are of a witnessI mean, they have known each other for a long time, that bail bondsman. [The State] called her to find out what she was going to testify about. I don't think that has changed. She pretty much has stuck to what she said all along, what she's going to be testifying to.
Obviously I wasn't there. I didn't hear or see the conversation. I don't know what took place between the two of them, whether there's any collusion, whether he's trying to tell her what she's going to say. I didn't hear any of that, simply where she's telling himI don't see the real harm at this point. I certainly wouldn't *846 want to[The State] may have a different view than I do.
THE COURT: [Prosecutor]?
[PROSECUTOR]: Your Honor, we have already had one incident in this trial with Mr. Skuza having contact with witnesses. I think the Court has made it abundantly clear to Mr. Skuza, by both reprimanding him and increasing his bail and taking him into custody, that he is to have no contact with witnesses. In no uncertain terms when you executed the conditions of release on June 19th, I don't think there's any confusion that he was to have no contact with any witnesses and also no contact with the victim, Ms. Anson.
In spite of it, I feel that Mr. Skuza continues to try to undermine the court process. Your Honor, it gives the State concern. But given the fact that we're so far into this process, I would think that we probably could do closing this morning. I'm not going to ask for a mistrial. I'm just going to ask that we proceed. Mr. Skuza may face some later ramifications from the Court and/or from the prosecutoring [sic] attorney for additional charges, but I'm not going to ask for a mistrial.
[DEFENSE COUNSEL]: I can't speak with regard to what Mr. Skuza understood when the Court was talking about the fact that he was not supposed to have contact with Ms. Anson. Did you feel at that point that you could not talk to your bail bondsman?
[SKUZA]: No.
THE COURT: Well, I specifically asked the bail bondsman to step out while [Skuza] testified, because we wanted to hear from his side of it first with regard to the bail jumping. I'm referring to the material found for me by the extern this morning pertaining to Rule 615, Federal 615, which deals with exclusion of witnesses. Part of it reads, "Therefore, when witnesses who meet and discuss testimony outside the courtroom, or witnesses who read trial transcripts or discuss the trial with others in attendance routinely are found in violation of Rule 15."[5] There's three recognized sanctions, one, holding the offending witness in contempt; two, permitting cross-examination concerning the violation; three, precluding the witness from testifying.
That's what I'm thinking, [defense counsel], is with Mr. Skuza, the defendant, stepping outside the courtroom and discussing his testimony with the bail bondsman that he intends to call as a witness, after being instructed to step out of the courtroom so that she could not hear the testimony of Mr. Skuza, and they are doing that outside the courtroom, I think it would be proper for me at this point to preclude the witness from testifying, period.
Any response?
[DEFENSE COUNSEL]: I'm just going to obviously, if the Court is-I'm objecting for the purpose of appeal and this witness should have been allowed to testify with regard to what the defense proffered, as to what their testimony would be.
I don't have anything more.
THE COURT: Anything from the State?
[PROSECUTOR]: No, Your Honor.
5 RP at 307-11. Citing ER 615, the trial court explained that Skuza and Spencer's conversation undermined the trial court's reasons for excluding Spencer from the courtroom during Skuza's testimony. The trial court prohibited Skuza from calling Spencer as a witness in his defense.
¶ 16 The State objected to two of Skuza's proposed jury instructions on an "uncontrollable circumstances" affirmative defense to bail jumping. The trial court refused to give any "uncontrollable circumstances" instruction, ruling that Skuza had failed to present enough evidence to support the instruction.
¶ 17 The jury found Skuza guilty on all four counts. The trial court sentenced Skuza *847 to 57 months of confinement followed by 9 to 18 months of community custody for the third degree assault and bail jumping convictions and concurrent suspended sentences of 365 days of confinement for the fourth degree assault and driving with a license suspended convictions. Skuza timely appeals.

ANALYSIS

ER 615 VIOLATION AND SANCTION
¶ 18 After reviewing the initial briefs and Skuza's SAG, we ordered supplemental briefing on the trial court's exclusion of Spencer's testimony. In its supplemental brief, the State argues that Skuza did not provide sufficient information to "inform the court of the nature and occurrence of the alleged errors," as required by RAP 10.10 governing SAGs. Suppl. Br. of Resp't at 4; see RAP 10.10(c).[6] In the alternative, the State argues that the trial court did not abuse its discretion when it excluded Spencer's testimony. We disagree.
¶ 19 Skuza adequately informed us of his assigned error to the exclusion of Spencer as a witness in his SAG
[a] criminal defendant is entitled to have jury instructed on a defense theory of the case if there is evidence to support the theory. I was denied my witness that would have supported the theory but the State's witness gave testimony to support the theory[.] RP 130 147-152[.] I made a phone call to bail co [sic] on same day [sic] I failed to appear is evidence[.] RP 29.
SAG at 6 (emphasis added). This statement is sufficient to challenge the exclusion of Spencer's testimony because it challenges the denial of a witness and not merely a denial of some testimony. While some of Skuza's testimony may have been excluded as inadmissible, Skuza's only denied witness was Spencer. Skuza adequately informed this court of his challenge to the exclusion of Spencer as a witness.
¶ 20 Washington's ER 615 provides,[7]
At the request of a party the court may order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be reasonably necessary to the presentation of the party's cause.
¶ 21 The intent of ER 615 is "to discourage or expose inconsistencies, fabrication, or collusion." KARL B. TEGLAND, 5A WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 615.2, at 623 (5th ed. 2007). Sanctions for a violation of an ER 615 exclusion ruling lie within the trial court's exercise of sound discretion. State v. Dixon, 37 Wash.App. 867, 877, 684 P.2d 725 (1984); see State v. Schapiro, 28 Wash.App. 860, 867, 626 P.2d 546 (1981). Abuse occurs when the trial court's discretion is "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." State ex rel. Carroll v. Junker, 79 Wash.2d 12, 26, 482 P.2d 775 (1971).
¶ 22 Several Court of Appeals' decisions have upheld a trial court's decision to allow witnesses to testify despite violating an ER 615 exclusion order. Dixon, 37 Wash.App. at 877, 684 P.2d 725; Schapiro, 28 Wash.App. at 868, 626 P.2d 546; State v. Walker, 19 Wash.App. 881, 883, 578 P.2d 83, review denied, 90 Wash.2d 1023 (1978). But no Washington court has addressed whether the trial court has discretion to suppress the testimony of a witness for an ER 615 violation. *848 Based on a review of other jurisdiction's decisions, there are generally three possible sanctions for an ER 615 violation that a Washington court may impose: (1) hold the witness in contempt, (2) allow cross-examination regarding the violation and/or comments about the witness's actions during closing argument, or (3) preclude the witness from testifying. TEGLAND, § 615.5, at 627-30.
¶ 23 Here, however, the trial court erred because there was no evidence that Spencer violated ER 615. The trial judge stated that he had seen Skuza and Spencer together in a smoking area near the court and heard a portion of a conversation between them. But the trial court failed to conduct a hearing regarding the circumstances of the interaction. Spencer, Skuza, and the trial judge were not questioned about the interaction or their observations of it. The trial judge made a statement, which was not subject to cross-examination, about what he had witnessed and the results of legal research the trial court extern had conducted. Counsel discussed the effect of the trial judge's observation on whether Spencer could be called as a defense witness in the proceeding but did not discuss the fact that the trial judge had inadvertently become a witness in the proceeding. Skuza had no opportunity to question the trial judge about his observations, call Spencer to testify about the specifics of their contact, or research the law to provide a defense or authority against the sanction of excluding Spencer's Testimony.
¶ 24 Moreover, the trial judge's description of the conversation did not identify specific exchanges that took place between Spencer and Skuza sufficient to warrant a finding that an ER 615 violation occurred. The trial judge only described statements that Spencer made to Skuza about her testimony and made no reference to specific statements that Skuza made to Spencer about her intended testimony or his prior testimony. It is possible that the conversation did not violate ER 615's intent, which is "to discourage or expose inconsistencies, fabrication, or collusion." Tegland, § 615.2, at 623. Skuza had already completed his testimony in the case by the time of the alleged violation, so Spencer telling Skuza about her intended testimony did not give Skuza an opportunity to alter his testimony to match hers.
¶ 25 Without a thorough factual development of the circumstances of the conversation, the record is insufficient to establish that an ER 615 violation occurred. On this record, the trial court erred when it applied the harshest possible sanction of excluding evidence central to the defendant's bail jumping defense.
¶ 26 At oral argument, the State argued that Skuza's violation of trial court orders prohibiting him from speaking with Spencer supported an inference of testimonial collusion justifying the trial court's exclusion of Spencer as a witness. But the three written court orders cited prohibited Skuza's contact only with Anson. The August 14, 2007 court order prohibits Skuza's contact with "Shelia [sic] Anson" (Clerk's Papers (CP) at 114); the September 5, 2007 court order does not limit Skuza's contact with anyone; and the June 19, 2008 court order, entered after Skuza's alleged contact with Anson and his attempt to influence Anson's testimony, states, "No contact w/ Ms. Anson" with the word "victim(s)" circled on the form but not the word "witness(es)." CP at 122. Despite the State's arguments and the trial court's belief at the time it excluded Spencer's testimony, Skuza does not appear to have violated the trial court's written orders by speaking with Spencer. The State argues that the trial court's June 19, 2008 oral ruling prohibited Skuza from having contact with potential witnesses. To the extent its oral rulings conflict with its written order, a written order controls over any apparent inconsistency with the court's earlier oral ruling. State v. Mallory, 69 Wash.2d 532, 533-34, 419 P.2d 324 (1966); see State v. Eppens, 30 Wash.App. 119, 126, 633 P.2d 92 (1981). The evidence is insufficient to establish that Skuza violated the trial court's orders and the trial court's exclusion of Spencer's testimony was error.
¶ 27 Skuza argues that the trial court's decision excluding Spencer's testimony on the ground that he violated ER 615 was error and that his bail jumping conviction *849 should be reversed. We agree. Accordingly, we reverse Skuza's bail jumping conviction and remand for further proceedings.[8]
¶ 28 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
We concur: VAN DEREN, J., and HOUGHTON, J.P.T.
NOTES
[1] RAP 10.10.
[2] Skuza does not appeal his driving with a license suspended conviction.
[3] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[4] Although the trial court's oral ruling included a prohibition on Skuza's contact with "the victims and witnesses," the trial court's written order prohibited only Skuza's contact with Anson. Compare 2 RP at 66 with Clerk's Papers (CP) at 121-22.
[5] We could not determine the original source of this uncited quote from material found by the trial court extern. We did find secondary sources conveying some information similar to parts of the quoted material. KARL B. TEGLAND, 5A WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 615, at 621 (5th ed. 2007); Robert H. Aronson, The Law of Evidence in Washington § 615 (4th ed. 2009).
[6] RAP 10.10(c) provides,

Citations; Identification of Errors. Reference to the record and citation to authorities are not necessary or required, but the appellate court will not consider a defendant/appellant's statement of additional grounds for review if it does not inform the court of the nature and occurrence of alleged errors. Except as required in cases in which counsel files a motion to withdraw as set forth in RAP 18.3(a)(2), the appellate court is not obligated to search the record in support of claims made in a defendant/appellant's statement of additional grounds for review.
[7] Washington's rule is similar to Fed.R.Evid. 615 and differs by substituting "shall" for "may" in the first sentence and substituting "essential" for "reasonably necessary" in the last sentence.
[8] Because we reverse Skuza's bail jumping conviction on these grounds, we do not address the other alleged grounds for its reversal raised in his SAG.