IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 48518-4-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| ANDREW JENS PETER MORTENSEN, | |
| Appellant. | |

MAXA, A.C.J. – Andrew Mortensen appeals his convictions of two counts of second degree assault, one involving assault with a deadly weapon. The convictions arose from an incident in which Mortensen fought with one man while Mortensen's friend fought with another man. The fighting stopped when Mortensen used his gun to hit the man he was fighting and to compel the other man to let go of his friend.

We hold that (1) the trial court erred in refusing to amend the self-defense instructions to incorporate the defense of another, but this error was harmless; (2) the trial court did not err in excluding a defense witness from being recalled when she remained in the courtroom after testifying in violation of the trial court's ER 615 witness exclusion order; (3) defense counsel provided ineffective assistance by not initially proposing a defense of another instruction and by allowing the defense witness to remain in the courtroom after testifying, but Mortensen does not show prejudice; (4) the trial court's reasonable doubt instruction was not constitutionally

deficient; (5) as the State concedes, Mortensen's two assault convictions violate double jeopardy; (6) the trial court properly imposed the criminal filing fee, which is a mandatory legal financial obligation (LFO) that could be imposed without considering Mortensen's ability to pay; and (7) as the State concedes, a scrivener's error in the judgment and sentence must be corrected on remand.

Accordingly, we affirm Mortensen's conviction of second degree assault with a deadly weapon (count two), vacate Mortensen's other conviction for second degree assault (count one) and the sentence relating to that conviction, and remand for correction of the scrivener's error in the judgment and sentence.

FACTS

*Assault Incident*

On the night of July 5, 2014, Mortensen, his girlfriend Aisha Nottingham, Aisha's[1] brother Michael Nottingham, and others were camping on the bank of a fishing channel along the Columbia River. The group was playing music at a high volume.

Scott Burkett, Joshua McDonald, and Bianca Lujan were across the channel. McDonald yelled to Mortensen's group to turn their music down. When Mortensen's group refused, the two groups began yelling insults and profanities across the water at each other. Someone in Mortensen's group eventually yelled that they could come over there and that they had a gun.

Mortensen and Michael Nottingham drove a boat across the channel, landing in front of a fire that Burkett, McDonald, and Lujan had made. The two groups started fighting – Nottingham

---

[1] To avoid confusion, we refer to Aisha Nottingham by her first name. We intend no disrespect.

with McDonald and Mortensen with Burkett. Eventually, Mortensen displayed a gun that he had with him and the fighting stopped. Mortensen and Nottingham then went back to their camp.

*Charged Offenses*

Mortensen was charged with three counts of second degree assault and three counts of harassment.[2] The first assault charge (count one) alleged that Mortensen inflicted substantial bodily harm on Burkett under RCW 9A.36.021(1)(a). The second assault charge (count two) alleged that Mortensen assaulted Burkett with a deadly weapon under RCW 9A.36.021(1)(c) and included a firearm enhancement under RCW 9.94A.825. The third assault charge (count three) alleged that Mortensen assaulted McDonald with a deadly weapon under RCW 9A.36.021(1)(c), and also included a firearm enhancement.

*Trial Testimony*

Burkett and McDonald testified at trial that Mortensen and Nottingham started the fight by charging at them as soon the boat landed. Burkett testified that he was able to put Mortensen in a choke hold on the ground, but he then heard the sound of a gun cocking and saw that Mortensen had a gun. Burkett let go and put his hands up while he backed away. Mortensen struck Burkett in the face and then in the head with the gun. Burkett yelled at McDonald to stop fighting because Mortensen had a gun. Burkett and McDonald both testified that Mortensen walked over to McDonald, pointed the gun at him, and said, "Do you want to die?" 2 Report of Proceedings (RP) at 186.

---

[2] The State eventually added a charge of tampering with a witness, and at trial the court dismissed the harassment charge involving Lujan based on insufficient evidence.

3

In contrast, Mortensen and Nottingham testified that they had attempted to avoid a fight. They testified that they crossed the river not for a confrontation, but because Nottingham needed to get to his car on the other side. Mortensen testified that because he did not want a fight, when the boat approached the other group's area he shouted out for the other people to stay where they were and not to come near.

Nottingham testified that when he got out of the boat, something hit him in the head, causing his eyebrow to split open. He stated that he saw someone about 10 feet away. Nottingham assumed that the person had hit him and rushed at the person, trying to detain him.

Mortensen testified that he was still on the boat when he saw a very large person dragging Nottingham away. Mortensen jumped out of the boat and attempted to run toward Nottingham, but heard someone behind him. He thought that whatever was happening to Nottingham was going to happen to him. He turned around and swung, connecting with Burkett's shoulder. Mortensen again tried to help Nottingham, but Burkett grabbed him from behind and pulled him backwards.

Mortensen testified that during the ensuing fight, his gun fell out of his waistband. Both he and Burkett reached for the gun but Mortensen was able to get a better grip. Mortensen swung the gun and connected with Burkett's face. Mortensen then yelled for McDonald to let Nottingham go. Nottingham heard Mortensen say "Get off my friend. Back up." 4 RP at 851. Mortensen and Nottingham then went back to the boat and left for the other side.

Mortensen stated that when he and Nottingham got back to their camp, the group talked about making up a story about what had happened. Mortensen admitted that he told a fabricated story to the police. He told one officer, David Krebs, that Burkett and McDonald had come

across the channel on a raft and started a fight. Mortensen testified that he told the story because

Officer Krebs and another officer had threatened him, saying that Mortensen would go to jail and

his children would be taken away from him if he had gone to the other side of the river.

*Witness Exclusion*

Mortensen attempted to elicit testimony from Aisha about Officer Krebs's alleged threat.

Aisha was at Mortensen's campsite and apparently heard the threat, but she did not know who

made it. The State objected on the grounds that it would be difficult to offer rebuttal testimony

because Aisha did not know who made the statement. The trial court initially sustained the

objection. Aisha completed her testimony without testifying about the threat.

The parties revisited the trial court's ruling during Mortensen's testimony. The court

determined that it would allow testimony on the threat. Immediately after that ruling, the court

noted that Aisha was in the courtroom, which would prevent her from being recalled under the

court's ER 615 witness exclusion order. Defense counsel stated that he did not expect to recall

Aisha. But he later sought to recall her and have her corroborate Mortensen's testimony. The

court denied permission, citing the ER 615 order requested by both parties that excluded

testifying witnesses from the courtroom.

*Jury Instructions*

Mortensen intended to submit a jury instruction on defense of another, consistent with his

testimony about attempting to help Nottingham. However, his proposed instructions and the

instructions given by the trial court for both assault and harassment addressed only self-defense.

The court also gave a first aggressor instruction that did reference defense of another.

Immediately after the court finished reading the jury instructions but before closing argument, defense counsel informed the court that the self-defense instructions erroneously did not include a reference to the defense of another. Counsel acknowledged that he had drafted the instructions and had only himself to blame. But he requested that the court add language to the self-defense instructions stating that a person can use force to lawfully aid a person who he reasonably believes is about to be injured.

The trial court denied the request, stating, "I've already read the instructions to the jury. We got all the way through the verdict forms. We've spent a lot of time on this." 10 RP at 1425. However, the court agreed that defense counsel could argue during closing argument that defense of another applied and that the State could not argue that defense of another did not apply.

The court also provided a standard instruction on reasonable doubt. The instruction included the statement, "A reasonable doubt is one for which a reason exists." Clerk's Papers (CP) at 142.

*Conviction and Sentencing*

The jury found Mortensen guilty on counts one and two, both for second degree assault of Burkett, and found that he was armed with a firearm on count two. The jury found Mortensen not guilty on the remaining counts, including count three for assaulting McDonald.

At sentencing, the State conceded that the two assault convictions constituted the same criminal conduct for purposes of calculating Mortensen's offender score. The trial court sentenced Mortensen at the top of the standard range, nine months for each count to run concurrently plus 36 months for the firearm enhancement. The court also imposed as an LFO a

6

criminal filing fee of $200. The judgment and sentence stated that Mortensen was found guilty based on a guilty plea rather than on a jury verdict.

Mortensen appeals his convictions and the court's imposition of the criminal filing fee LFO.

## ANALYSIS

A.      INSTRUCTION ON DEFENSE OF ANOTHER

Mortensen argues that the trial court erred by refusing his request, made after the court had given the jury instructions but before closing arguments, to amend the self-defense instructions to incorporate defense of another. We agree, but we hold that the error was harmless.

1.      Legal Principles

A person's use of force against someone is lawful if he or she (1) reasonably believes that he or she is about to be injured or (2) is aiding a person who he or she reasonably believes is about to be injured. RCW 9A.16.020(3); *see also* 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 17.02, at 268 (4th ed. 2016) (WPIC).

"A criminal defendant is entitled to an instruction on his or her theory of the case if the evidence supports the instruction." *State v. Werner*, 170 Wn.2d 333, 336, 241 P.3d 410 (2010). More specifically, a defendant is entitled to a self-defense or defense of another instruction if there is "some evidence" demonstrating self-defense or defense of another. *Id.* at 336-37 (addressing self-defense); *see also State v. Marquez*, 131 Wn. App. 566, 578, 127 P.3d 786 (2006) (addressing defense of another). The "some evidence" threshold is a low burden; the

evidence does not even need to create a reasonable doubt. *State v. George*, 161 Wn. App. 86, 96, 249 P.3d 202 (2011).

The trial court must evaluate evidence of self-defense "from the standpoint of a reasonably prudent person who knows all the defendant knows and sees all the defendant sees." *State v. Read*, 147 Wn.2d 238, 242, 53 P.3d 26 (2002). This analysis involves both subjective and objective components. *Id.* at 242-43. For the subjective component, the court must "place itself in the defendant's shoes and view the defendant's acts in light of all the facts and circumstances the defendant knew when the act occurred." *Id.* at 243. For the objective component, the court must "determine what a reasonable person would have done if placed in the defendant's situation." *Id.* The same approach applies to the defense of another. *See Marquez*, 131 Wn. App. at 575.

Defense of another has other limitations. Specifically, a defendant's use of force is justifiable to protect a third party from injury when: (a) the defendant would be justified in using force to defend himself or herself against the same injury being threatened against the third party; (b) under the circumstances as understood by the defendant, the third party would be justified in using force to protect himself or herself; and (c) the defendant believes that the intervention is necessary to protect the third party. *State v. Penn*, 89 Wn.2d 63, 66, 568 P.2d 797 (1977). In addition, the defendant's apprehension of danger must be reasonable under the circumstances. *Id.*

Whether the evidence is sufficient to support a self-defense or defense of another instruction is a question of law that we review de novo. *See State v. Fisher*, 185 Wn.2d 836, 849, 374 P.3d 1185 (2016) (stating rule for self-defense). In deciding whether such an

instruction should have been given, we must view the evidence in the light most favorable to the defendant. *Id.* And the defendant can rely on any evidence produced at trial to support the defense, even if inconsistent with his or her own testimony. *Id.* at 849-51.

2. Assault Charge Regarding McDonald

The State charged Mortensen with assaulting McDonald with a deadly weapon. The evidence was sufficient to support a defense of another instruction for the assault charge involving McDonald. Mortensen testified that he saw McDonald dragging Nottingham away and was trying to help Nottingham. He then pointed a gun at McDonald to make him stop fighting with Nottingham.

The trial court erred in refusing to give a defense of another instruction for this charge.[3] However, the jury acquitted Mortensen on the assault charge regarding McDonald. Therefore, the trial court's error was harmless for this charge.

3. Assault Convictions Regarding Burkett

The State charged Mortensen with two counts of assault against Burkett. The question is whether there was sufficient evidence to support a defense of another instruction regarding these charges.

---

[3] Defense counsel failed to propose a defense of another instruction, but discovered his mistake in time to correct it – before closing arguments began. It appears that the trial court did not want to go through the inconvenience of amending the instruction and reading the revised instruction to the jury when the court was ready to proceed with closing argument. However, the court's convenience is not a valid reason for refusing to give an instruction to which a defendant is entitled.

a. Applicability of Defense of Another

There is no evidence that Burkett ever fought with, attempted to fight with, or even was anywhere near Nottingham. Burkett's only involvement in the incident was fighting with Mortensen. And there was no evidence that Mortensen used force against Burkett to prevent him from joining McDonald in assaulting Nottingham. According to Mortensen, he fought with Burkett only because Burkett ran up behind him and later grabbed him from behind. Therefore, it would initially appear that Mortensen used force against Burkett only to defend himself, not to defend Nottingham. The trial court properly gave a *self-defense* instruction that applied to Mortensen's use of force against Burkett.

However, Mortensen argues that defense of another is applicable because his goal in fighting with Burkett was to assist Nottingham. He testified that Burkett ran up behind him and then attacked him from behind as he moved toward McDonald and Nottingham. Mortensen argues that he was justified in using force against Burkett because Burkett was trying to prevent him from coming to Nottingham's aid.

No Washington case addresses facts similar to this case – whether a defendant's use of force against the victim is justified as defense of another when the victim has not injured or threatened to injure the person being defended but is trying to prevent the defendant from coming to that person's aid.

A strict application of the second *Penn* prong would not seem to allow Mortensen's use of force against Burkett under a defense of another theory. Under that prong, Mortensen would be justified in using force against Burkett only to the extent that Nottingham would have been justified in using the same force to protect himself against Burkett. *Penn*, 89 Wn.2d at 66. But

Burkett never threatened to injure Nottingham – only McDonald did. Therefore, Nottingham would not have been justified in using force against Burkett.

On the other hand, the more general analysis the Supreme Court has outlined in self-defense cases involving subjective and objective components, *see Read*, 147 Wn.2d at 242-43, is more favorable to Mortensen. Subjectively, there is evidence that Mortensen was in fact attempting to come to Nottingham's aid and that the only reason he used force against Burkett was because Burkett attempted to stop him. Objectively, viewing the evidence in the light most favorable to Mortensen, a reasonable person placed in Mortensen's position could have believed that it was necessary to get to Nottingham to defend him and would have fought off efforts to prevent his assistance.

Based on the evidence in this case, we hold that there was sufficient evidence to support a defense against another instruction for Mortensen's assault charges regarding Burkett.

b.    Harmless Error

The State argues that even if the trial court erred in refusing to give a defense of another instruction, any error was harmless. A defendant has the constitutional right to a jury instruction on defense of another when that defense is supported by the evidence. *See George*, 161 Wn. App. at 100-01 (stating rule for self-defense). The State must show that any error of constitutional magnitude was harmless beyond a reasonable doubt. *State v. Lynch*, 178 Wn.2d 487, 494, 309 P.3d 482 (2013).

A combination of two factors demonstrates that the trial court's error here was harmless. First, the trial court's self-defense instructions arguably allowed Mortensen to argue his theory of the case. The court's self-defense instruction stated:

11

> It is a defense to a charge of Assault in the Second Degree that the force used or offered to be used was lawful as defined in this instruction.
>
> The force used or offered to be used upon or toward the person of another is lawful when used by a person who reasonably believes that he is about to be injured in preventing or attempting to prevent an offense against the person, and when the force is not more than is necessary.

CP at 153. The court provided a similar self-defense instruction regarding the harassment charge.

The court also gave a first aggressor instruction that specifically mentioned defense of another:

> No person may, by any intentional act reasonably likely to provoke a belligerent response, create a necessity for acting in self-defense *or defense of another* and thereupon use, offer, or attempt to use force upon or toward another person. Therefore, if you find beyond a reasonable doubt that the defendant was the aggressor, and that defendant's acts and conduct provoked or commenced the fight, then self-defense *or defense of another* is not available as a defense.

CP at 155 (emphasis added).

In closing argument, defense counsel argued that the self-defense instructions included a defense of another component:

> [T]here's a jury instruction here on self-defense. It's also -- it's a dual-purpose instruction. It's Instructions 16 and 17. Those are called "defenses." They are defense of self *or another person*. It's dual purpose. It's a little confusing from reading at it, but it's -- you can defend yourself *or another person*. If the person reasonably believes they're about to be harmed, they can use reasonable, necessary force to protect themselves *or protect another person*.

RP at 1504 (emphasis added).

Mortensen correctly points out that the fact that defense counsel was able to argue defense of another even though the court's instructions did not allow such a defense does not necessarily make the court's error harmless. The court's instructions explicitly required jurors to

disregard any remark not supported by evidence or the court's instructions. However, when refusing to give a defense of another instruction, the trial court expressly precluded the State from arguing that defense of another did not apply. Therefore, here Mortensen was able to argue defense of another based on the language of the court's instructions without contradiction from the State.

Second, the jury found Mortensen guilty of assaulting Burkett despite the self-defense instruction. As noted above, the trial court's instructions stated that if Mortensen was the first aggressor he could not rely on either self-defense or defense of another. Because the jury rejected Mortensen's self-defense argument, it must have found that Mortensen was the aggressor with regard to Burkett. This same finding would have precluded Mortensen's defense of another defense.

Mortensen responds that the defense of another instruction could have impacted the jury's assessment of whether Mortensen was the first aggressor. Mortensen claims that without a defense of another instruction, the jurors were not permitted to consider that Mortensen's objective in knocking Burkett down was not to act as an aggressor against Burkett but to come to Nottingham's aid.

But the absence of a defense of another instruction did not prevent Mortensen from arguing that Burkett was the first aggressor in their altercation by running up behind him and then grabbing him from behind as Mortensen attempted to reach Nottingham. And Mortensen did testify and argue that he was attempting to assist Nottingham. Mortensen's defense of another argument would have been the same as his self-defense argument: that he was justified in fighting with Burkett because Burkett attacked him first. The jury rejected this argument

13

regarding self-defense. There is no reason to believe that the result would have been different had the court's instructions included defense of another.

Including a defense of another instruction would not have changed the outcome of the trial under the facts here. Therefore, we hold that the trial court's failure to include a defense of another instruction was harmless error with regard to the assault charges involving Burkett.

B.     EXCLUSION OF DEFENSE WITNESSES

Mortensen argues that the trial court violated his constitutional right to present a defense when the court prevented him from recalling Aisha. He had intended for her to testify about the alleged threat Officer Krebs made to Mortensen that Mortensen would go to jail and his children would be taken away from him if he had gone to the other side of the river. The court refused to allow Aisha to testify because she had remained in the courtroom while Mortensen testified about the alleged threat. We hold that the trial court did not err.

1.     Legal Background

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution require that defendants have a meaningful opportunity to present a defense. *State v. Ortuno-Perez*, 196 Wn. App. 771, 783-84, 385 P.3d 218 (2016). This right includes the right to present witness testimony in establishing a defense. *State v. Lizarraga*, 191 Wn. App. 530, 551-52, 364 P.3d 810 (2015), *review denied*, 185 Wn.2d 1022 (2016).

A defendant's right to present testimony is not absolute and is subject to established rules of procedure and evidence designed to ensure fairness and reliability in determining guilt or innocence. *Id.* at 553. Evidentiary rules do not infringe on a defendant's right to present a defense so long as they are not arbitrary and disproportionate to their intended purpose. *Id.* As a

result, a defendant's interest in presenting relevant evidence may, on occasion, yield to accommodate other legitimate interests in the criminal trial process. *Id.*

Here, the trial court had issued an order excluding all witnesses from the courtroom under ER 615. That rule states:

> At the request of a party the court may order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be reasonably necessary to the presentation of the party's cause.

ER at 615. The rule's purpose is to discourage or expose inconsistencies, fabrication, or collusion in witnesses' testimony. *State v. Skuza*, 156 Wn. App. 886, 896, 235 P.3d 842 (2010). A trial court can respond to an ER 615 violation in three ways: (1) hold the witness in contempt, (2) allow cross-examination concerning the violation or address the violation in closing argument, or (3) preclude the witness from testifying. *Id.* The trial court has discretion in imposing an appropriate sanction for violation of an ER 615 order. *Id.*

*Skuza* appears to be the only Washington case addressing a trial court's decision to exclude witness testimony based on violation of ER 615. However, the relevant part of the rule is identical to the federal version and the issue has been repeatedly litigated in federal appellate courts. When interpreting a Washington rule of evidence that mirrors the federal rule, we can look to federal cases as persuasive authority. *State v. McBride*, 192 Wn. App. 859, 870, 370 P.3d 982 (2016).

The Ninth Circuit addressed this issue in *United States v. Hobbs*, 31 F.3d 918 (9th Cir. 1994). There, two witnesses in a suppression hearing were in the courtroom during part of the

hearing. *Id.* at 920. The court held that exclusion of the witnesses' testimony was error implicating the defendant's constitutional right to present evidence in his defense. *Id.* at 923.

The court explained that generally a witness in violation of ER 615 " 'cannot be excluded on that ground merely, although the right to exclude under particular circumstances may be supported as within the sound discretion of the trial court.' " *Id.* at 921 (quoting *Holder v. United States*, 150 U.S. 91, 92, 14 S. Ct. 10, 37 L. Ed. 1010 (1893)). But the court noted three factors in determining whether exclusion of the witness is an appropriate remedy: (1) whether the excluded witness's testimony would be cumulative of testimony by other witnesses, (2) how central the excluded testimony was to the defendant's case, and (3) whether the defendant or defense counsel cooperated in the violation. *Hobbs*, 31 F.3d at 922-23.

2.   Analysis

Here, Aisha's proposed testimony about Officer Krebs's threat involved a collateral issue – *why* Mortensen admittedly lied to law enforcement about the incident – and was not central to Mortensen's case. And her testimony was cumulative of Mortensen's testimony about the threat, although it would have corroborated his account. The exclusion of Aisha's testimony on this issue therefore did not prevent Mortensen from presenting a defense and did not rise to the level of a constitutional violation.

In addition, the trial court noted at the time that Aisha was in the courtroom and expressly informed defense counsel that if she was going to be recalled she could not remain. The trial court's warning came immediately after the court had allowed Mortensen to testify about Officer Krebs's alleged threat. Defense counsel informed the court that he did not plan to recall Aisha.

But counsel should have recognized that Aisha might need to be recalled. Defense counsel therefore participated in Aisha's violation of the court's ER 615 order.

The record shows that the trial court did not enforce its ER 615 order in an arbitrary or unfair manner. Its reason for excluding Aisha's testimony was directly related to the rule's intended purpose of exposing inconsistencies, fabrication, or collusion. *Skuza*, 156 Wn. App. at 896. That purpose is particularly significant here, where Aisha had limited knowledge and could have adjusted her testimony to match Mortensen's testimony.

We hold that Mortensen's right to present a defense was not violated and that the trial court did not abuse its discretion in excluding Aisha from being recalled to testify about Officer Krebs's alleged threat to Mortensen.

C.    INEFFECTIVE ASSISTANCE OF COUNSEL

Mortensen argues that he received ineffective assistance when defense counsel (1) failed to initially propose an instruction on defense of another, and (2) failed to ensure that Aisha remained outside the courtroom in case she needed to be recalled. We agree that defense counsel's performance was deficient. However, we hold that Mortensen cannot show that he was prejudiced.

1.    Legal Principles

We review ineffective assistance of counsel claims de novo. *State v. Clark*, 187 Wn.2d 641, 649, 389 P.3d 462 (2017). To prevail on an ineffective assistance claim, the defendant must show both that (1) defense counsel's representation was deficient and (2) the deficient representation prejudiced the defendant. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011). Representation is deficient if, after considering all the circumstances, it falls below an

objective standard of reasonableness. *Id.* at 33. Prejudice exists if there is a reasonable probability that, except for counsel's errors, the result of the proceeding would have been different. *Id.* at 34. A reasonable probability of prejudice is sufficient if the deficient performance undermines confidence in the trial's outcome. *Id.*

We begin our analysis with a strong presumption that counsel's performance was effective. *Id.* at 33. To rebut this presumption, the defendant must establish the absence of any " 'conceivable legitimate tactic explaining counsel's performance.' " *Id.* (emphasis added) (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)). If defense counsel's conduct can be considered to be a legitimate trial strategy or tactic, counsel's performance is not deficient. *Grier*, 171 Wn.2d at 33. We review the challenged conduct from defense counsel's perspective at the time. *Id.* at 34.

2.    Instruction on Defense of Another

Here, defense counsel erred by not submitting timely proposed jury instructions that supported Mortensen's defense of another theory of the case. As discussed above, Mortensen was entitled to a defense of another instruction. Defense counsel admitted the error to the trial court when he requested a corrected instruction. Therefore, defense counsel's conduct was deficient.

But defense counsel realized his mistake and informed the trial court in time to correct it. In addition, as discussed above, the trial court's error in refusing to give a defense of others instruction was harmless. If the State satisfies the "beyond a reasonable doubt" standard for determining harmless error relevant to a trial court's error of constitutional magnitude, it

18

necessarily satisfies the "reasonable probability" standard for determining prejudice on an ineffective assistance of counsel claim.

We hold that Mortensen failed to show that defense counsel's deficient performance prejudiced him. Accordingly, we hold that Mortensen's ineffective assistance of counsel claim on this basis fails.

3.    Allowing Aisha to Remain in Courtroom

Defense counsel also was deficient by allowing Aisha to remain in the courtroom when it was likely that she would be recalled. However, as stated above, defense counsel's error did not prevent Aisha from testifying on other issues. The excluded testimony was relevant only to Mortensen's credibility. Mortensen had already admitted to lying to Officer Krebs, and Aisha could testify only to Mortensen's likely motivation for doing so. But even on this narrow point, Aisha's testimony was of limited value because she apparently did not know which officer made the threat. The prejudicial effect of her exclusion was limited to a relatively minor point on which she knew little. Therefore, Aisha's exclusion does not undermine confidence in the trial's outcome.

We hold that Mortensen has not shown that he was prejudiced by defense counsel's decision to allow Aisha into the courtroom. Accordingly, we hold that Mortensen's ineffective assistance of counsel claim on this basis fails.

D.    REASONABLE DOUBT INSTRUCTION

Mortensen argues that the trial court's reasonable doubt instruction was constitutionally deficient because it includes the statement that "[a] reasonable doubt is one for which a reason exists." Br. of Appellant at 33. We disagree.

19

The trial court's instruction was taken verbatim from WPIC 4.01. In *State v. Bennett*, the Supreme Court admonished trial courts to use the exact language of WPIC 4.01. 161 Wn.2d 303, 318, 165 P.3d 1241 (2007). The court reaffirmed that WPIC 4.01 was proper in *State v. Kalebaugh*, 183 Wn.2d 578, 585, 355 P.3d 253 (2015). In *State v. Parnel*, this court responded to the same challenge to WPIC 4.01 that Mortensen now makes. 195 Wn. App. 325, 381 P.3d 128, *review denied,* 186 Wn.2d 1031 (2016). The court stated that it was bound by the Supreme Court's affirmation that WPIC 4.01 provides the correct legal instruction on reasonable doubt. *Id.* at 328.

Accordingly, we hold that the trial court did not err in giving a reasonable doubt instruction identical to WPIC 4.01.

E.    DOUBLE JEOPARDY

Mortensen argues that his conviction for two counts of second degree assault against Burkett violated double jeopardy. The State concedes that one of Mortensen's convictions should be dismissed. We agree.

The constitutional guarantee against double jeopardy protects defendants from being punished multiple times for the same offense. *State v. Mutch*, 171 Wn.2d 646, 661, 254 P.3d 803 (2011); *see* U.S. CONST. amend. V; WASH. CONST. art. I, § 9. The remedy is to vacate the lesser charge or the charge that carries a lesser sentence. *State v. Weber*, 159 Wn.2d 252, 269, 149 P.3d 646 (2006). We review double jeopardy claims de novo. *State v. Villanueva-Gonzalez*, 180 Wn.2d 975, 979-80, 329 P.3d 78 (2014).

The applicable double jeopardy analysis depends on the type of convictions at issue. When the defendant has multiple convictions under a single statutory provision, we apply a "unit

of prosecution" analysis. *Id.* at 980. This inquiry requires us to identify what act or course of conduct the legislature has defined as the punishable act. *Id.*

In course of conduct offenses, a defendant cannot be convicted multiples times under the same statute for acts that comprise a single course of conduct. *State v. Diaz-Flores*, 148 Wn. App. 911, 915, 201 P.3d 1073 (2009). Assault is a course of conduct crime. *Villanueva-Gonzalez*, 180 Wn.2d at 984-85. Whether multiple assaultive acts constitute one course of conduct is a fact-based question that looks to factors like the length of time over which the acts took place, the location of each act, the motivation for each act, any interruption or intervening acts, and the defendant's opportunity for reflection. *Id.* at 985.

Here, Mortensen was charged twice with second degree assault against Burkett, once under RCW 9A.36.021(1)(a) for inflicting substantial bodily harm when striking Burkett and again under RCW 9A.36.021(1)(c) for assault with a deadly weapon for pointing a gun at Burkett. These acts took place in quick succession and the same location. Mortensen's motivation did not change from one act to the other, there was no interruption between them, and he had no opportunity for reflection. Therefore, these acts constitute a single course of conduct that can be punished only once under the assault statute.

Accordingly, we hold that Mortensen's two assault convictions constitutes double jeopardy. The remedy is to vacate the conviction that carries a lesser sentence. Here that conviction is count one, which does not include the firearm enhancement.

F.      IMPOSITION OF CRIMINAL FILING FEE

Mortensen argues that the trial court erred in imposing a criminal filing fee as an LFO without conducting an adequate inquiry into his ability to pay. He claims that, contrary to this

court's decision in *State v. Lundy*, 176 Wn. App. 96, 308 P.3d 755 (2013), a criminal filing fee is a discretionary rather than a mandatory LFO. We disagree.

Former RCW 36.18.020(2)(h) (2013) provides that upon conviction in superior court, the defendant "shall be liable" for a $200 fee for services of the court clerk. The word "shall" presumptively creates an imperative duty rather than conferring discretion. *State v. Blazina*, 182 Wn.2d 827, 838, 344 P.3d 680 (2015).

Mortensen argues that the phrase "shall be liable" in former RCW 36.18.020(2)(h) is ambiguous as to whether the fee is mandatory. This court recently rejected an identical argument in *State v. Gonzales*, holding that the language that the defendant "*shall* be liable" imposes a mandatory requirement. 198 Wn. App. 151, 155, 392 P.3d 1158, *review denied,* 188 Wn.2d 1022 (2017) (emphasis added). The court confirmed the holding from *Lundy* that criminal filing fees are mandatory and must be imposed regardless of ability to pay. *id.*; *see Lundy*, 176 Wn. App. at 103.

We hold that under *Gonzales* and *Lundy*, the trial court properly imposed a criminal filing fee as a mandatory LFO without considering Mortensen's ability to pay.

G.    MISTAKE IN JUDGMENT AND SENTENCE

Mortensen points out, and the State agrees, that Mortensen's judgment and sentence includes a scrivener's error stating that he pleaded guilty. We remand for the trial court to correct this error. The judgment and sentence should reflect that Mortensen was found guilty by jury verdict.

No. 48518-4-II

H.    APPELLATE COSTS

Mortensen asks that we refrain from awarding appellate costs if the State seeks them.  We decline to consider the issue.  A court commissioner will determine whether to award costs under RAP 14.2 if the State decides to file a cost bill and if Mortensen objects to that cost bill.

CONCLUSION

We affirm Mortensen's conviction of second degree assault with a deadly weapon (count two), vacate Mortensen's other conviction for second degree assault (count one) and the sentence relating to that conviction, and remand for correction of the scrivener's error in the judgment and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record pursuant to RCW 2.06.040, it is so ordered.

_____
MAXA, A.C.J.

We concur:

_____
JOHANSON, J.

_____
LEE, J.

23